James J. Bracher Executive Director Florida Healthcare Purchasing Cooperative, Inc.
QUESTION:
May local government entities as defined in s. 408.001, F.S., expend public funds to participate in the Florida Health Care Purchasing Cooperative?
SUMMARY:
The Florida Health Care Purchasing Cooperative Act, s. 408.001, F.S., authorizes the participation of local government entities in the pooled purchasing arrangements for health care insurance coverage of the cooperative created pursuant to the act.
You ask whether the provisions of s. 112.08(2), F.S., prevent a local government's participation in the cooperative. Sub-section (1) of the statute, last amended in 1984,[1] provides in part:
 (2)(a) Every local governmental unit is authorized to provide and pay out of its available funds for all or part of the premium for life, health, accident, hospitalization, legal expense, or annuity insurance, or all or any kinds of such insurance, for the officers and employees of the local governmental unit and for health, accident, hospitalization, and legal expense insurance for the dependents of such officers and employees upon a group insurance plan and, to that end, to enter into contracts with insurance companies or professional administrators to provide such insurance. . . .[2]
In 1991, the Florida Legislature enacted s. 408.001, F.S., the Florida Health Care Purchasing Cooperative Act, which authorized the creation of the Florida Health Care Purchasing Cooperative.[3]
The purpose of the cooperative is to pool the purchasing power for health care services of state and local government entities, service providers under contract with such governmental entities, and other entities identified by the cooperative as potential participants in pooled purchasing arrangements.[4] Although created as a nonprofit private corporation, the members of the cooperative include:
1. All state governmental entities that purchase health care services for clients or for employees through health care coverage;
2. Local governmental entities, including, but not limited to, counties, municipalities, school districts, and other special districts, that voluntarily become members;
3. Service providers under contract with governmental entities, which providers may voluntarily become members when the cooperative determines it is appropriate; and
4. Other entities identified as potential members of the cooperative, such as groups of small employers or part-time employees, which entities may voluntarily become members when the cooperative determines it is appropriate.[5] (e.s.)
The cooperative is authorized to receive and accept grants, loans, or advances of funds from any public or private agency and to accept contributions from any source.[6] The Health Care Cost Containment Board is responsible for providing staff and administrative support to the cooperative.[7]
The cooperative is authorized to:
1. Negotiate and enter into contracts on behalf of its members with health care provider networks and third-party payers for the delivery of health care services;
2. Negotiate and enter into contracts on behalf of its members with insurance carriers, reinsurers, and third-party administrators for insurance, aggregate stop loss, specific stop loss, and administrative services; and
3. In geographic areas where cost-effective health care provider networks that provide good quality services do not exist, assist members in developing health care provider networks and negotiate and contract directly with health care providers for the provision of health care services. . . .[8]
As noted supra, the purpose of the cooperative is to pool the purchasing power of state and local governments to obtain health care services. By designating local governmental entities as members of the cooperative, if they so desire, s. 408.001, F.S., clearly contemplates that a local government may participate in the cooperative and expend public funds for that purpose.
Where the language used by the Legislature makes clear the legislative intent, it is incumbent upon the courts and this office to give effect to that intent.[9] Moreover, to the extent that there were any conflicts with the provisions of s.112.08, F.S., s. 408.001, F.S., as the latest expression of legislative intent, would prevail over the provisions of s.112.08(1), F.S., to the extent of such conflict.[10]
Therefore, I am of the opinion that the Florida Health Care Purchasing Cooperative, established pursuant to s. 408.001, F.S., may provide for the participation of local government entities in its pooled purchasing arrangements for health care coverage.
RAB/tjw
[1] See, s. 1, Ch. 84-307, Laws of Florida, which substantially rewrote the statute.
[2] "Local governmental unit" is defined for purposes of the statute to mean "any county, municipality, community college district, school board, or special district or any county officer listed in s. 1(d) of Art. VIII of the State Constitution."See, s. 112.08(1), F.S. And see, s. 112.0801, F.S., authorizing retired employees to participate in a governmental agency's group insurance.
[3] See, s. 94, Ch. 91-282, Laws of Florida. Andsee, s. 408.001(1), F.S., designating the act as the Florida Health Care Purchasing Cooperative Act.
[4] Section 408.001(2)(a), F.S.
[5] Section 408.001(2)(b), F.S.
[6] Section 408.001(2)(a), F.S.
[7] Section 408.001(4), F.S.
[8] Section 408.001(2)(d), F.S.
[9] See, In re Order on Prosecution of Criminal Appeals by Tenth Judicial Circuit Public Defender, 561 So.2d 1130
(Fla. 1990) (legislative intent is the polestar by which the court must be guided in interpreting statutory provisions); Barruzza v. Suddath Van Lines, Inc., 474 So.2d 861 (1 D.C.A. Fla., 1985).
[10] See, e.g., State v. Parsons, 569 So.2d 437
(Fla. 1990) (where two statutes are inconsistent, the more recent prevails); Mikos v. Ringling Bros.-Barnum Bailey Combined Shows, Inc., 475 So.2d 292 (2 D.C.A. Fla., 1985) (in cases of statutory inconsistency, the last expression of legislative intent prevails).