PRELIMINARY ORDER

PARKER, Chief Judge.
David Rodriquez has filed a petition for writ of mandamus with this court in which he asserts that he is represented in his appeal by James Marion Moorman, Public Defender of the Tenth Judicial Circuit. The petition alleges that Mr. Moorman’s office is denying Rodriquez access to counsel and access to this court by failing to timely process his appeal. His notice of appeal was filed in June 1996. Rodriquez’s petition alleges:
On December 11, 1996, Rodriquez received a letter from Robert D. Rosen, Director and Assistant Public Defender, Hillsbor-ough County Division for the 10th Judicial Circuit Stating “[P]lease keep in mind that once an attorney is assigned, the initial brief will likely be filed within sixty days of assignment. If an attorney cannot be timely assigned to your case because of this Offices’ excessive caseloads, our Office may move to withdraw and request the appointment of other Counsel”.
Another letter from the Pulie [sic] Defender’s Office stated that they are just preparing briefs for cases that are two years behind.
Rodriquez’s petition requests that Mr. Moor-man’s office file his initial brief within thirty days or move to withdraw in order that Rodriquez can be provided another court-appointed attorney to handle his appeal.
Rodriquez was sentenced to twenty years’ prison in June 1996. The record in this case was filed in this court on November 19,1996. The initial brief has not been filed in this court.
Mr. Moorman’s response to Rodriquez’s petition, which was filed on August 11, 1997, states:
1. This office received the order designating undersigned as appellate counsel December 2,1996.
2. The 13th Circuit division is presently assigning cases for briefing from October and November 1996.
3. It is the policy of the undersigned to attempt to assign the more serious cases (defined for this purpose as those with sentences in excess of 15 years in prison in which there was a jury trial) to the more experienced attorneys in the division. “Experienced” is subjectively based upon years practicing appellate law with the office or success experienced with difficult issues.
4. Mr. Rodriguez’s [sic] case is a serious case. He received a sentence of twenty years in the Department of Corrections of which he will serve 85% at a minimum. The matter was resolved against him following a lengthy jury trial. The record on appeal in this case is 1,176 pages. It is reasonable to expect an experienced appellate advocate to take an entire month to read, note, research and brief this significant case. It is reasonable to believe that the record may need to be supplemented if the briefing attorney discovers necessary testimony or orders to be missing from the record. Supplementation takes a minimum of a month, thus adding to the time needed for filing the initial brief.
5. By not moving to withdraw from this significant case, the undersigned could assure the client and the court that experienced counsel would advocate for the appellant. There is no guarantee that experienced appellate counsel will be appointed to prosecute client’s appeal.

COMMENTS ON THE ABOVE AND MOTION TO WITHDRAW

This Court has become increasingly and laudably active in safeguarding appellants rights to reasonably timely review. The undersigned takes his statutory responsibility to prosecute appeals seriously and weighs the consequences of moving to *81 withdraw against the right of appellants to have timely review. As an officer of this Court, the undersigned has an ethical responsibility to provide appellants with the best advocacy possible. Appellate advocacy is not an administrative process. There is an advantage to having competent, experienced counsel as appellate advocate. The same ethical concerns governing other legal representation apply to indigent criminal appeals.
Presently, the undersigned is seeing a trend toward longer records caused by an increasing number of jury trials. The increase is concomitant with recent legislation mandating longer sentences and longer sentence servitude. The result is that under our present organization there has been too little flexibility in bringing experienced attorneys to bear on the ever increasing number of cases with sentences exceeding 15 years.
Effective September 1997, a new office organization goes into effect which will allow greater flexibility as a larger pool of experienced attorneys will be available for assignment to serious cases.
As the undersigned can not assure the client or this Court that the initial brief will be filed sooner than sixty days from today’s date, the undersigned requests this Court to treat this response as a motion to withdraw from Mr. Rodriguez’s [sic] cases.
This court is acutely aware of the enormous number of public defender delinquent cases pending in this court. In response to another prisoner’s petition for writ of habeas corpus, Mr. Moorman’s office states that, as of June 30, 1997, 751 cases assigned to that office are delinquent and have not been briefed. By Mr. Moorman’s own numbers, on July 25, 1997, the public defender has an additional 125 pending cases in this court.
This is a continuation of a problem- that has existed in this court for years. The supreme court addressed the problem in In re Order on Prosecution of Criminal Appeals by Tenth Judicial Circuit Public Defender, 561 So.2d 1130 (Fla.1990). In that order, the supreme court recognized that indigent appellants must have the same ability to obtain meaningful appellate review as wealthy appellants. The supreme court then stated:
We believe the proper course to be followed in such a situation is for the appellate public defender to continue to be appointed as appellate counsel under section 27.51. However, where the backlog of cases in the public defender’s office is so excessive that there is no possible way he can timely handle those cases, it is his responsibility to move the court to withdraw. If the court finds that the public defender’s caseload is so excessive as to create a conflict, other counsel for the indigent defendant should be appointed pursuant to subsection 27.53(3). - This procedure is equally applicable to cases for trial and on appeal. If the case is on appeal, the motion should be filed in the district court, because once the record has been transmitted, the circuit court no longer has jurisdiction. The district court may then order the circuit court to handle the motions. See Fla. R.App. P. 9.600(b)_ [T]he county need not be given an opportunity to be heard before the appointment of counsel, even though it will be the responsibility of the county to compensate private counsel.
This procedure, however, does not address the existing problem of the enormous backlog of appellate cases awaiting briefs in the office of the Public Defender for the Tenth Judicial Circuit. This situation demands immediate resolution; the constitutional rights of these indigent ap-pellates are being violated. These delinquent appeals must be briefed promptly. We believe this situation can only be resolved by massive employment of the private sector bar on a “one-shot” basis. In this regard, the legislature is best able to address this emergency situation. The legislature, therefore, should appropriate sufficient funds so that private counsel may be appointed to brief and pursue these appeals forthwith.
... Therefore, although this Court may not be able to order the legislature to appropriate those funds, we-must advise the legislature that if sufficient funds are not appropriated within sixty days from *82 the filing of this opinion, and counsel hired and appearances filed within 120 days from the filing of this opinion, the courts of this state with appropriate jurisdiction will entertain motions for writs of habeas corpus from those indigent appellants whose appellate briefs are delinquent sixty days or more, and upon finding merit to those petitions, will order the immediate release pending appeal of indigent convicted felons who are otherwise bondable. See §§ 903.131-903.133, Fla. Stat. (1989). While this will not alleviate the situation, it will ameliorate the hardship on those persons. There can be no justification for their continued incarceration during the time that their constitutional rights are being ignored or violated.
In re Order, 561 So.2d at 1138-39 (footnotes omitted).
In entering this order, the supreme court was mindful of the fact that the requirement of the appointment of private attorneys to handle those overdue appeals would create a financial hardship on the counties where the cases originated. The supreme court stated:
We also recognize the severe financial burden that this funding scheme places on the counties; however, the legislature is the proper forum to address this concern. We strongly recommend that the legislature, at the very least, provide sufficient funds to reimburse the counties pursuant to the program set up in section 925.037.
In re Order, 561 So.2d at 1138 (footnote omitted).
The supreme court again addressed this problem in In re Certification of Conflict in Motions to Withdraw Filed by Public Defender of Tenth Judicial Circuit, 636 So.2d 18 (Fla.1994), where the supreme court was reviewing this court’s appointment of a fact-finding commissioner to review Mr. Moor-man’s motion to withdraw from 249 overdue appeals. The supreme court concluded that this court acted properly in seeking the appointment of a commissioner to conduct a hearing and, in doing so, this court made no attempt to “micromanage” the affairs of Mr. Moorman’s office. The supreme court stated:
In sum, we approve the procedure employed by the district court under the special circumstances of this ease. We note that the court did not attempt to interfere in the management of the Public Defender’s office, or attempt to instruct the Public Defender on how best to conduct his affairs. The court’s inquiry was limited to an objective assessment of the Public Defender’s practices in processing appeals in order to confirm that a factual basis existed for the Public Defender’s motions.
In re Certification, 636 So.2d at 22.
This court again addressed this problem in Fletcher v. State, 696 So.2d 794 (Fla. 2d DCA 1997) (en banc), when an assistant public defender filed a motion to reinstate an appeal in which he made the assertion that a defendant who escaped had not “thwarted the orderly effective administration of justice” where “that system is already thwarted and frustrated by a substantial backlog of cases that cannot be processed in a timely manner.” Id. Judge Altenbernd, speaking for this court, stated:
It is important for the public to understand that no “immense appellate backlog” exists in this court. Even with our substantial case load, most appeals are processed well within acceptable time standards once the parties have filed their briefs. On the other hand, a backlog exists and has existed for years in the office of the Public Defender of the Tenth Judicial Circuit, which is responsible for handling appeals for indigent defendants throughout the Second District. As a result of that backlog, criminal appeals are often delayed for a period in excess of a year beyond the schedule delineated in the Florida Rules of Appellate Procedure.
This court has employed virtually every available tool to determine the causes of that backlog and to seek a solution. See, e.g., Order on Motions to Withdraw, 622 So.2d 2 (Fla. 2d DCA 1993), affirmed, 636 So.2d 18 (Fla.1994). Many believe that the legislature’s chronic underfunding of the public defender’s office has contributed significantly to this problem. We are unable to state with certainty, however, that underfunding is the sole cause leading to *83 the backlog in the office of the Public Defender of the Tenth Judicial Circuit because that office appears to be the only appellate public defender in Florida with such a severe problem. Regardless of the causes, the public defender’s office continues to fail to serve many of its clients in a timely fashion, and this court reluctantly reheves that office of its statutory obligations in many cases.[1] When we remove the Public Defender of the Tenth Judicial Circuit from a case, the cost of that appeal is frequently shifted to taxpayers in counties who have no right to vote for or against the person who holds the office of Public Defender in the Tenth Judicial Circuit. This surely is not the system contemplated by article V of the Florida Constitution, but it is the only system available to this court. Legislators from counties within the Second District should understand that if the state fails to fund adequately the constitutionally mandated statewide system of public defenders, their constituents probably pay a greater proportion of this burden through local taxation.
Fletcher v. State, 696 So.2d at 796.
This court is fully cognizant of the financial burden to the fourteen counties in this district to pay for attorneys to handle these delinquent appeals. We are aware of the supreme court’s opinion in In re Order that this court cannot ignore the constitutional rights of indigent appellants whose appellate briefs are delinquent by sixty days or more. However, we reserve ruling on Mr. Moor-man’s motion to withdraw and will hold the petition in abeyance for sixty days to permit Mr. Moorman’s office to file the initial brief in this ease. If no brief is filed within that time, this court will grant Rodriquez’s petition and direct the chief judge of the Thirteenth Judicial Circuit to appoint an attorney to complete this appeal. We adopt this position for two reasons. First, we accept Mr. Moorman’s statement that this is a serious case that needs an experienced appellate advocate. Second, it is this court’s experience that many of the attorneys in the Thirteenth Judicial Circuit who volunteer to accept appointments to handle appeals of indigent defendants do not have significant experience in appellate law. We assume this is because (1) there are limited funds available to appoint attorneys to these cases, or (2) there are a limited number of attorneys who volunteer to have their name on a list to accept these cases. However, we conclude there has to be a point where any attorney who is willing to immediately address an incarcerated defendant’s appeal is better than an attorney from Mr. Moorman’s office who cannot guarantee this court that the initial brief will be filed within eleven months after receiving the record on appeal.
There is no hope that this overall problem will ever be solved without a consistently high level of appellate brief output by Mr. Moorman’s office. This court, on its own motions, removed his office from 200 cases in September 1996, 100 cases in March 1997, and 100 cases in May 1997. During the sixty-day period of July 1, 1997, through August 31, 1997, this court’s records reflect that Mr. Moorman’s office has twenty-four attorneys filing briefs with this court, which we assume are assigned full-time to appellate work, and these attorneys filed 95 initial briefs, totaling 1520 pages, 26 answer briefs, totaling 217 pages, and 32 reply briefs, totaling 159 pages. If these numbers are projected, on a yearly basis, this court should receive approximately 726 initial and answer briefs from Mr. Moorman’s office.[1] Because Mr. Moorman’s office is currently assigned to process between 100 and 125 appeals a month with this court, which total at the minimum 1200 public defender appeals a year, the submission of briefs from his office at the current level can only increase the delinquent eases for which Mr. Moorman is responsible. If the number of initial and answer briefs filed by Mr. Moorman’s office does not increase, that delinquency can only *84 grow every month to be added to already staggering delinquency numbers.[2]
The average size of the appellate record this court sees in these appeals leads this court to conclude that each full-time appellate attorney assigned to criminal cases should submit, on a yearly basis, an average of four to six initial or answer briefs per month, in addition to the reply briefs submitted.[3] But the supreme court has made it clear that this court is not permitted to micromanage the appellate production of Mr. Moorman’s office. See In re Certification. Although section 27.51(4)(b), Florida Statutes (1995), mandates that Mr. Moorman will process the appeals of indigent defendants from fourteen counties, an enormous number of those appeals are not being timely handled by his office.
We reserve ruling on Rodriquez’s petition for sixty days. If the Office of the Public Defender of the Tenth Judicial Circuit has not submitted the initial brief in this case within sixty days, this court will direct that the chief judge of the Thirteenth Judicial Circuit appoint an attorney to represent Rodriquez in this appeal.
LAZZARA and WHATLEY, JJ., concur.

. Since October 1995, this court has relieved the public defender’s office of its statutory responsibilities in approximately 375 cases. As an estimate, this number represents about ten percent of that office's case load in this court.

. We recognize that these numbers may be low because the numbers are based upon a summer period where employee vacations may affect work output.

. An exact number of the delinquency growth per month is difficult to establish because a small number of cases assigned to Mr. Moorman's office are dismissed monthly without the necessity of the filing of appellate briefs but do require an attorney to review the file to determine the appropriate action. These cases include motions for voluntary dismissal, suggestions of lack of jurisdiction, and dismissals of appeals from guilty pleas pursuant to Counts v. State, 376 So.2d 59 (Fla. 2d DCA 1979).

. Reply briefs filed with this court average between two to seven pages and, generally, only are filed as a response to distinguish one or two cases cited hy the state in its answer brief.