561 So.2d 1130 (1990)
In re ORDER ON PROSECUTION OF CRIMINAL APPEALS BY the TENTH JUDICIAL CIRCUIT PUBLIC DEFENDER.
Nos. 74574, 74580, 74629, 74630 and 74631.
Supreme Court of Florida.
May 3, 1990.
*1131 Susan H. Churuti, County Atty., and John E. Schaefer, Asst. County Atty., Clearwater, James G. Yaeger, County Atty., and Elizabeth M. Woodford, Asst. County Atty., Fort Myers, Lee County joining Pinellas County, and Kenneth B. Cuyler, County Atty., and Brenda C. Wilson and Ramiro Manalich, Asst. County Attys., Naples, Collier County joining Pinellas County, for petitioner in No. 74574.
James Marion Moorman, Public Defender, Bartow, for respondents.
Will J. Richardson, Tallahassee, amicus curiae for Florida Ass'n of Counties, Inc.
Bennett H. Brummer, Public Defender, and Joseph Louis Campbell, Sp. Asst. Public Defender, Miami, amicus curiae for the Florida Public Defender Ass'n, Inc.
Robert A. Butterworth, Atty. Gen., and Richard E. Doran, Director, Criminal Appeals, Dept. of Legal Affairs, Tallahassee, amicus curiae for State of Fla.
H. Hamilton Rice, Jr., County Atty., and Paul G. Bangel, Asst. County Atty., Bradenton, for petitioner in No. 74580.
Sandra J. Augustine, County Atty., and Charles H. Webb, Asst. County Atty., Port Charlotte, for petitioner in No. 74629.
Frederick B. Karl, County Atty., and Jeanne Z. McLean and Robert R. Warchola, Asst. County Attys., Tampa, for petitioner in No. 74630.
James G. Yaeger, County Atty., and Elizabeth M. Woodford, Asst. County Atty., Fort Myers, for petitioner in No. 74631.
PER CURIAM.
Six Florida counties, Pinellas, Manatee, Charlotte, Hillsborough, Lee, and Collier, in five consolidated cases, challenge an order of the Second District Court of Appeal dated May 12, 1989, regarding the prosecution of criminal appeals by the Public Defender for the Tenth Judicial Circuit. We have jurisdiction because this case affects a class of constitutional officers, public defenders. Art. V, § 3(b)(3), Fla. Const. We approve in part and modify the order of the Second District Court.

I.
The order under review is a response to the tremendous backlog of appeals to the Second District Court by indigent defendants in which briefs are substantially overdue. This backlog of cases awaiting briefing has grown from 408 cases in June 1986 to 1,005 cases in March 1989. Brief of James Marion Moorman at 5. The Public Defender for the Tenth Judicial Circuit, James Marion Moorman,[1] has estimated that currently as many as 1700 cases could be awaiting the filing of appellate briefs. Id. at 5 n. 1.
The state of Florida provides defendants with the statutory right to appeal their judgments and sentences. § 924.06, Fla. Stat. (1989). When a state affords a first appeal of right, it must supply indigent appellants with an attorney, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), because under the doctrine of equal protection, indigent appellants must have the same ability to obtain meaningful appellate review as wealthy appellants. Id.; Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Because of the tremendous backlog of indigent appeals, the briefs of nonindigents in the Second District are being filed at least a year sooner than those of indigents represented by the public defender. Certainly this creates a serious constitutional dilemma.[2] Further, as we noted in Hatten v. *1132 State, 561 So.2d 562 (Fla. 1990), the lengthy delay in filing initial briefs in appeals by indigents is a clear violation of the indigent state defendant's constitutional right to effective assistance of counsel on appeal. See Hooks v. State, 253 So.2d 424 (Fla. 1971), cert. denied, 405 U.S. 1044, 92 S.Ct. 1330, 31 L.Ed.2d 587 (1972); McDaniel v. State, 219 So.2d 421 (Fla. 1969); see also Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).
The source of this problem is clearly the woefully inadequate funding of the public defenders' offices, despite repeated appeals to the legislature for assistance. Although this problem has been most acute in the Second District because that court has the highest number of criminal appeals of any of Florida's district courts of appeal, Order on the Prosecution of Criminal Appeals by the Tenth Judicial Circuit Public Defender, slip op. at 1 (Fla. 2d DCA May 12, 1989) [hereinafter "Order"], we recognize that this is a statewide concern. The same problem exists, though at present to a lesser extent, in the other four districts.[3] Further, this serious underfunding of the public defenders' offices affects both trial and appellate caseload. This problem was studied statewide by a special committee of the Florida Judicial Council, which concluded that
the problem of the criminal workload within the judicial system of the State of Florida is a problem of volume that cannot be regulated, but must be dealt with as it occurs. Not only does the problem exist now in crisis proportions, but it appears that the workload in regard to all parts of the criminal justice system is likely to increase.
Report of the Judicial Council Special Committee on Criminal Appeal Structure Relating to Indigent Defendants at 9 (March 30, 1989).
In an attempt to deal with this crisis situation, the Second District Court, sua sponte, issued the order under review. The court noted that because of the inability of the Public Defender for the Tenth Judicial Circuit to timely process appeals,
he is being required to choose which of his appellants' appeals will be pursued according to the severity of their sentences. When an attorney representing indigent defendants is required to make choices between the rights of the various defendants, a conflict of interest is inevitably created.

... .
The rights of defendants in criminal proceedings brought by the state cannot be subjected to the fate of choice no matter how rational that choice may be because of the circumstances of the situation.
Order, slip op. at 2-3 (emphasis added). The court then stated that "[b]ecause of the increasing number of delinquent appeals and the increasing average length of time taken to file briefs in these cases, we think the necessity for further action by this court to protect the rights of those appellants is apparent." Id., slip op. at 5.
The court's order prohibits Mr. Moorman from accepting appeals from any judicial circuit other than the Tenth in which the notice of appeal was filed after May 22, *1133 1989. The order further mandates that circuit judges within each circuit appoint that circuit's public defender to handle appeals from that circuit. If a public defender from one of those circuits has a conflict, the order requires that they file motions to withdraw so that the circuit judge may appoint other counsel to represent those clients at the expense of local government.
As authority for its action, the court quoted Rose v. Palm Beach County, 361 So.2d 135, 137 (Fla. 1978), in which this Court stated:
[W]here the fundamental rights of individuals are concerned, the judiciary may not abdicate its responsibility and defer to legislative or administrative arrangements... .
Every court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction, subject to valid existing laws and constitutional provisions. The doctrine of inherent judicial power as it relates to the practice of compelling the expenditure of funds by the executive and legislative branches of government has developed as a way of responding to inaction or inadequate action that amounts to a threat to the courts' ability to make effective their jurisdiction. The doctrine exists because it is crucial to the survival of the judiciary as an independent, functioning and coequal branch of government. The invocation of the doctrine is most compelling when the judicial function at issue is the safe-guarding of fundamental rights.
(Footnotes omitted.) The court below stated that "the inherent power of courts is sufficient to afford us the remedy necessary for the protection of rights of indigent defendants charged with crimes." Order, slip op. at 3. We agree with the court below that courts have the inherent authority to issue orders addressing problems such as this. However, as the district court also recognized, that inherent power is limited by the state and federal constitutions. Because we find that some aspects of the district court's order ignore the existing statutory mechanism, we approve in part and modify the order.

II.
The counties challenge the district court's order on both procedural and substantive grounds. First, the counties challenge the order procedurally, arguing that their due process rights have been violated because the order unquestionably will have a substantial financial impact on the counties and they were given neither notice nor an opportunity to be heard before the order was issued. We disagree. The order currently under review is merely the most recent in a series of efforts by the Second District Court to deal with this increasing problem. See, e.g., Haggins v. State, 498 So.2d 953 (Fla. 2d DCA 1986); In re Order on Prosecution of Criminal Appeals by the Tenth Circuit Public Defender, 523 So.2d 1149 (Fla. 2d DCA 1987). Although these efforts have had a beneficial effect on the prosecution of the oldest appeals, the backlog of noncapital indigent criminal appeals has continued to grow at an alarming rate. In connection with at least two of these prior efforts by the Second District Court, all interested parties, including the counties, have been given an opportunity to respond. See id. The issues remain the same, and apparently the counties' response also remains unchanged. The only difference in the situation since the counties last were given an opportunity to respond is that the backlog is even larger, developing into a crisis situation of constitutional dimensions where an indigent defendant may wait in excess of two years for his case to be briefed. As the counties have been afforded the opportunity to respond in the ongoing effort to deal with this crisis, we see no violation of due process for the counties in this case.
Moreover, this Court has already considered whether in cases where the public defender seeks to withdraw because of conflict the counties must be allowed to respond to the motions to withdraw because of their substantial financial interest in the outcome. In Escambia County v. Behr, 384 So.2d 147 (Fla. 1980), although Chief Justice England in his concurrence argued that "the counties are the only real parties *1134 in interest in such a proceeding, and they should be able to challenge the evidence offered to support a claim of excess caseload," id. at 150 (England, C.J., concurring), this Court held that "[t]he court does not have to ... allow the county an opportunity to be heard before appointing private counsel." Id. at 150. We reaffirm this statement from Behr.
Next, the counties and amicus challenge the court below's prohibiting the Public Defender for the Tenth Judicial Circuit from accepting appeals from other judicial circuits, and mandating that "[t]he circuit judges within each circuit shall appoint that circuit's public defender to handle such appeals." Order, slip op. at 5. By so doing, they argue, the court impermissibly redefined the duties of the public defender in a manner inconsistent with those duties as established by the legislature.
Public defenders are constitutional officers. Article V, section 18, of the Florida Constitution, provides in pertinent part that "[i]n each judicial circuit a public defender shall be elected for a term of four years. He shall perform duties prescribed by general law." The legislature, in accordance with this provision, defined the duties of the public defender and set forth guidelines for indigent representation in chapter 27, Florida Statutes. Section 27.51, Florida Statutes (1989), provides in pertinent part:
(4) The public defender for a judicial circuit enumerated in this subsection shall, after the record on appeal is transmitted to the appellate court by the office of the public defender which handled the trial and if requested by any public defender within the indicated appellate district, handle all felony appeals to the state and federal courts required of the official making such request:
... .
(b) Public defender of the tenth judicial circuit, on behalf of any public defender within the district comprising the Second District Court of Appeal.
This statute clearly sets out which public defenders are responsible for appeals, and imposes no appellate duty on the other public defenders beyond transmission of the record. The statute does allow the other public defenders the option of handling their own appeals, but it in no way imposes such a duty on them.
The order at bar not only relieves the Public Defender for the Tenth Judicial Circuit from handling appeals from other circuits within the Second District, but also prohibits him from doing so, and places appellate duties on the trial public defenders from the other circuits. We believe that within the existing statutory framework there exists a method for resolving the problem of excessive caseload.
In Escambia County v. Behr, 384 So.2d 147 (Fla. 1980), this Court recognized that excessive caseload in the public defender's office creates a problem regarding effective representation. In that decision, we approved the authority of the trial court to appoint private counsel to represent an indigent on appeal under the provisions of subsection 27.53(2), Florida Statutes (1977). At the time of Behr, subsection 27.53(2), Florida Statutes (1977), read in pertinent part:
(2) In addition, any member of the bar in good standing may be appointed by the court to, or may register his or her availability to the public defender of each judicial circuit for acceptance of, special assignments without salary to represent insolvent defendants... .
(Emphasis added.) Based on this statutory provision, this Court in Behr and Judge Hubbart in his dissent in Dade County v. Baker, 362 So.2d 151, 154 (Fla. 3d DCA 1978), quashed, Escambia County v. Behr, 384 So.2d 147 (Fla. 1980), which we adopted in Behr, found that the court's discretion to appoint other counsel in lieu of the public defender is "virtually unfettered and not dependent on a showing of a lawful ground or special circumstances." Behr, 384 So.2d at 149.
In 1981, following this Court's decision in Behr, the legislature deleted from subsection 27.53(2) the all important words "in addition, [any member] of the bar may be appointed by the court." Ch. 81-273, Laws of Fla. The relevant part of this subsection now reads:

*1135 (2) Any member of The Florida Bar, in good standing, may register his availability to the public defender of any judicial circuit for acceptance of special assignments without salary to represent indigent defendants.
§ 27.53(2), Fla. Stat. (1989). Subsection 27.53(2) no longer provides an independent mechanism for appointment of counsel in lieu of the public defender.
However, in subsection 27.53(3), Florida Statutes (1989), the legislature has provided an appropriate mechanism to handle the problem of excessive caseload. That subsection provides in pertinent part:
(3) If at any time during the representation of two or more indigents the public defender shall determine that the interests of those accused are so adverse or hostile that they cannot all be counseled by the public defender or his staff without conflict of interest, or that none can be counseled by the public defender or his staff because of conflict of interest, it shall be his duty to move the court to appoint other counsel. The court may appoint either:
(a) One or more members of The Florida Bar, who are in no way affiliated with the public defender, in his capacity as such, or in his private practice, to represent those accused; or
(b) A public defender from another circuit. Such public defender shall be provided office space, utilities, telephone services, and custodial services, as may be necessary for the proper and efficient function of the office, by the county in which the trial is held.
... .
When excessive caseload forces the public defender to choose between the rights of the various indigent criminal defendants he represents, a conflict of interest is inevitably created. As the court below stated, "The rights of defendants in criminal proceedings brought by the state cannot be subjected to the fate of choice no matter how rational that choice may be because of the circumstances of the situation." Order, slip op. at 3. Subsection 27.53(3) provides a valid mechanism to handle such situations.
The 1981 amendment of the statute also added paragraph (3)(b) of section 27.53, which expressly authorizes the appointment of other public defenders where a public defender is permitted to withdraw because of conflict. Although this section does not differentiate between trial and appellate public defenders, when read in pari materia with section 27.51 which defines the duties of the public defenders, it is clear that when an appellate public defender withdraws due to conflict, only another appellate public defender, or private counsel, may be appointed. Of course, the trial public defender always has the authority to accept appellate responsibility for a case if he or she so desires. The fact that subsection 27.51(6), Florida Statutes (1989), states that funding for appellate work shall be provided to the enumerated appellate public defenders' offices, and no such funding is provided to the other public defenders' offices, highlights that the legislature considers that only the enumerated public defenders have the responsibility of handling appeals.
By far, however, the major concern of the counties is the question of compensation for counsel appointed when a public defender is permitted to withdraw because of conflict. The counties essentially make two arguments: 1) The state has accepted the responsibility for funding the offices of the public defenders, and indeed, has prohibited the counties from contributing to the operation of the public defenders' offices. The state, therefore, should compensate attorneys appointed in cases of conflict, especially as the conflict is created by the underfunding of the public defenders, and any compensation to the conflict attorneys would essentially be a contribution to the public defenders. 2) By the amendment to subsection 27.53(2) in 1981, the state relieved the counties of the burden of compensating conflict attorneys, placing it instead on the state itself.
The counties are correct that the state has expressly undertaken to fund the public *1136 defenders to handle appeals,[4] and has expressly prohibited the counties from contributing funds to the operation of the offices of the public defenders.[5] However, this does not resolve the issue. Court-appointed counsel in conflict situations are not employees of the public defender's office. Indeed, paragraph 27.53(3)(a) specifically provides that court-appointed private counsel should in no way be affiliated with the public defender's office. Therefore, payment by the counties of court-appointed private counsel in conflict cases does not constitute a contribution to the public defender's office, and does not contravene subsection 27.54(2).
Further, while it is true that the legislature's failure to adequately fund the public defenders' offices is at the heart of this problem, and the legislature should live up to its responsibilities and appropriate an adequate amount for this purpose, it is not the function of this Court to decide what constitutes adequate funding and then order the legislature to appropriate such an amount. Appropriation of funds for the operation of government is a legislative function. See art. VII, § 1(c), Fla. Const. ("No money shall be drawn from the treasury except in pursuance of appropriation made by law."). "[T]he judiciary cannot compel the Legislature to exercise a purely legislative prerogative." Dade County Classroom Teachers Ass'n v. The Legislature, 269 So.2d 684, 686 (Fla. 1972).
Nor do we agree that by adopting chapter 81-273, Laws of Florida, the state accepted the obligation to fund court-appointed private counsel, which responsibility has been on the counties. Chapter 81-273 deleted the following language from subsection 27.53(2):
Fees, costs, and expenses shall be fixed by the trial judge and shall be paid in the same manner and amount as counsel fees are paid in capital cases or as otherwise provided by law. In addition, such defense counsel may be assigned and paid pursuant to any existing or future local act or general act of local application.
Ch. 81-273, § 2, Laws of Fla. (emphasis added). The payment of counsel fees in capital cases is governed by section 925.035, Florida Statutes (1989). Subsection 925.035(6) provides an express requirement that attorneys' fees in capital cases be paid by the county. Chapter 81-273 also amended subsection 27.53(2) to read: "Such persons shall be listed and referred to as special assistant public defenders and be paid a fee and costs and expenses as provided in s. 925.036." Id. (emphasis added). Section 925.036, which provides maximum levels for compensation of appointed counsel,[6] was also amended by chapter 81-273 to increase the maximum awards and to provide:
If the attorney is representing a defendant charged with more than one offense in the same case, the attorney shall be compensated at the rate provided for the most serious offense for which he represented the defendant. This section does *1137 not allow stacking of the fees limits established by this section.
Ch. 81-273, § 4, Laws of Fla. The counties argue that by removing the language in subsection 27.53(2) which tied the payment of fees for court-appointed private counsel in noncapital cases to those in capital cases, the legislature also intended to eliminate the requirement that the county pay for court-appointed counsel in noncapital cases.
Legislative intent is the polestar by which we must be guided in interpreting these statutory provisions. See, e.g., Parker v. State, 406 So.2d 1089 (Fla. 1981). The best evidence of the intent of the legislature is generally the plain meaning of the statute. See, e.g., St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071 (Fla. 1982). However, in this case the plain meaning of the statute is less than clear. First, although the amendment to subsection 27.53(2) deleted the only language that tied the payment of court-appointed attorneys in noncapital cases to the statute that addresses such payment in capital cases, wherein lies the express language placing the burden for such payment on the counties, no language was added to assign that responsibility to the state. Courts should not add additional words to a statute not placed there by the legislature, especially where uncertainty exists as to the intent of the legislature. See Devin v. City of Hollywood, 351 So.2d 1022 (Fla. 4th DCA 1976). It is difficult to believe that the legislature intended by its silence to undertake this financial burden. What remains is a statute that is at best ambiguous as to who should pay for court-appointed counsel in noncapital cases. We must therefore look beyond the language of the statute itself to determine legislative intent. Ison v. Zimmerman, 372 So.2d 431 (Fla. 1979).
The legislative history of chapter 81-273, Laws of Florida, makes it clear that the legislature never intended to relieve the counties of the obligation of paying for court-appointed attorneys in noncapital conflict cases. The Staff Analysis prepared for the Florida Senate Judiciary-Civil Committee, the Senate committee that heard Committee Substitute for Senate Bill 654 (1981), which became chapter 81-273, is particularly informative. The Staff Analysis states that the effect of the bill was to increase the maximum fee awards per case for court-appointed attorneys, and disallow the stacking of fees for each count of an indictment or information which this Court upheld in Wakulla County v. Davis, 395 So.2d 540 (Fla. 1981). Nowhere does it mention that the bill would shift the responsibility to pay for court-appointed attorneys from the county to the state. Further, under the economic impact section of the analysis, no mention is made of a fiscal impact on the state. Indeed, the analysis shows that the bill was withdrawn from the Senate Committee on Appropriations without report. If the bill was to have shifted the financial burden for court-appointed counsel onto the state, it would of necessity have a serious fiscal impact on the state, and it would have been passed on by the Appropriations Committee. It appears that the purpose of the bill was to aid the counties by limiting their liability for fees in such situations by eliminating the stacking of attorneys fees. See also Letter from Sylvia Alberdi, Staff Director of the S. Comm. on Judiciary-Civ. to Senator Johnson, Chairman of the S.Comm. on Judiciary-Civ. (Dec. 23, 1981) (on file Fla. State Archives, series 18, carton 1293). Clearly, the legislature never intended by the passage of chapter 81-273 to shift the responsibility for compensating court-appointed attorneys from the counties to the state. Therefore, that obligation remains on the counties.
This conclusion is bolstered by the passage during the 1989 legislative session of chapter 89-129, Laws of Florida, creating section 925.037, Florida Statutes (1989), a pilot program to reimburse the counties for fees paid to court-appointed counsel in capital and noncapital conflict cases. If the legislature considered the payment of those fees to be primarily a state responsibility, no such program would be required because the state would be paying those fees *1138 from the outset. Most tellingly, subsection (8) of section 925.037 provides: "Nothing contained in this chapter shall be construed to be an appropriation. Once the allocation to the county has been expended, any further obligation under s. 27.53(3) shall continue to be the responsibility of the county pursuant to this chapter." (Emphasis added.) This new statute is good evidence that the legislature views the primary responsibility for compensating court-appointed attorneys as being on the counties, that the 1981 amendment to subsection 27.53(2) did not alter that scheme, and that the legislature is only now beginning to address the tremendous financial burden that scheme places on the counties.
It may well be that the counties are correct in asserting that the state should accept complete financial responsibility for the public defenders so that there is no need to appoint private counsel to handle cases which would be handled by the public defenders if they were properly funded. These defendants are being prosecuted for violation of state laws, not county ordinances. We also recognize the severe financial burden that this funding scheme places on the counties; however, the legislature is the proper forum to address this concern. We strongly recommend that the legislature, at the very least, provide sufficient funds to reimburse the counties pursuant to the program set up in section 925.037.[7]

III.
We conclude from our analysis that the Second District Court properly invoked the inherent power of the judiciary in issuing its order of May 12, 1989. However, we modify the procedure adopted by the district court to make it more consistent with existing legislative directions.
We believe the proper course to be followed in such a situation is for the appellate public defender to continue to be appointed as appellate counsel under section 27.51. However, where the backlog of cases in the public defender's office is so excessive that there is no possible way he can timely handle those cases, it is his responsibility to move the court to withdraw. If the court finds that the public defender's caseload is so excessive as to create a conflict, other counsel for the indigent defendant should be appointed pursuant to subsection 27.53(3). This procedure is equally applicable to cases for trial and on appeal. If the case is on appeal, the motion should be filed in the district court, because once the record has been transmitted, the circuit court no longer has jurisdiction. The district court may then order the circuit court to handle the motions. See Fla.R.App.P. 9.600(b). As this Court noted in Behr, the county need not be given an opportunity to be heard before the appointment of counsel, even though it will be the responsibility of the county to compensate private counsel.
This procedure, however, does not address the existing problem of the enormous backlog of appellate cases awaiting briefs in the office of the Public Defender for the Tenth Judicial Circuit. This situation demands immediate resolution; the constitutional rights of these indigent appellants are being violated.[8] These delinquent appeals must be briefed promptly. We believe this situation can only be resolved by massive employment of the private sector bar on a "one-shot" basis.[9] In this regard, the legislature is best able to address this emergency situation. The legislature, therefore, should appropriate sufficient *1139 funds so that private counsel may be appointed to brief and pursue these appeals forthwith.[10]
As this Court stated in Dade County Classroom Teachers Association v. The Legislature:
When the people have spoken through their organic law concerning their basic rights, it is primarily the duty of the legislative body to provide the ways and means of enforcing such rights; however, in the absence of appropriate legislative action, it is the responsibility of the courts to do so.
269 So.2d at 686. Therefore, although this Court may not be able to order the legislature to appropriate those funds, we must advise the legislature that if sufficient funds are not appropriated within sixty days from the filing of this opinion, and counsel hired and appearances filed within 120 days from the filing of this opinion, the courts of this state with appropriate jurisdiction will entertain motions for writs of habeas corpus from those indigent appellants whose appellate briefs are delinquent sixty days or more, and upon finding merit to those petitions, will order the immediate release pending appeal of indigent convicted felons who are otherwise bondable. See §§ 903.131-903.133, Fla. Stat. (1989).[11] While this will not alleviate the situation, it will ameliorate the hardship on those persons. There can be no justification for their continued incarceration during the time that their constitutional rights are being ignored or violated.
For the reasons set forth above, we approve in part and modify the order of the Second District Court of Appeal dated May 12, 1989.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Paragraph 27.51(4)(b), Florida Statutes (1989), assigns to the Public Defender for the Tenth Judicial Circuit the responsibility of handling appeals "on behalf of any public defender within the district comprising the Second District Court of Appeal."
[2] A prime example of this dilemma is provided by the cases of Tim v. State, 553 So.2d 370 (Fla. 2d DCA 1989), and Sotolongo v. State, 530 So.2d 514 (Fla. 2d DCA 1988). Tim and Sotolongo were codefendants in a trial on drug-related felony charges. The trial court denied their motions to suppress on December 3, 1986. A timely notice of appeal was filed for Tim on December 31, 1986, and the Public Defender for the Tenth Judicial Circuit was appointed to defend her on January 20, 1987. The record on appeal was received August 3, 1987, but no attorney was assigned to the case until October 1988. In July 1988, the Second District Court issued an order dismissing the Tim case along with that of several other indigent appellants. That order became final on October 26, 1988, however, Tim's brief was not mailed until October 31, 1988. The Second District Court permanently dismissed the appeal, and denied motions to recall that order. Tim filed a petition for writ of mandamus in this Court, and on May 15, 1989, this Court issued an order directing the Second District Court to reinstate the appeal. Meanwhile, on May 12, 1989, the Second District Court issued the order at issue in this case, which reconsidered the cases dismissed in October 1988. The Second District Court subsequently reinstated Tim's appeal, accepted the briefs, and reversed the trial court's denial of her motion to suppress in an opinion issued December 8, 1989. Tim, 553 So.2d at 370. By contrast, codefendant Sotolongo, who was represented by private counsel, received his reversal on the same grounds on September 7, 1988  more than a full year before Tim, who had served her full three-year sentence before the decision in her case was rendered.
[3] For example, in the third district, approximately 15% of indigent appellants serve their sentences before briefs are filed or their cases are disposed of by the court. Brief of the Florida Public Defender Association, Inc. as Amicus Curiae at 14 n. 6
[4] Subsection 27.51(6), Florida Statutes (1989), states: "A sum shall be appropriated to the public defender of each judicial circuit enumerated in subsection (4) for the employment of assistant public defenders and clerical employees and the payment of expenses incurred in cases on appeal."
[5] Section 27.54, Florida Statutes (1989), provides in pertinent part:

(2) No county or municipality shall appropriate or contribute funds to the operation of the offices of the various public defenders, except that a county or municipality may appropriate or contribute funds to pay the salary of one assistant public defender whose sole function shall be to defend indigents charged with violations of special laws or with violations of ordinances of the county or municipality.
... .
(4) No public defender or assistant public defender shall receive from any county or municipality any supplemental salary, except as provided in this section.
[6] Fees in excess of these maximum levels may be awarded by the court when necessary "to ensure the adequate representation of the criminally accused" and so "that an attorney who has served the public by defending the accused is not compensated in an amount which is confiscatory of his or her time, energy and talents." Makemson v. Martin County, 491 So.2d 1109, 1112, 1115 (Fla. 1986), cert. denied, 479 U.S. 1043, 107 S.Ct. 908, 93 L.Ed.2d 857 (1987).
[7] We also believe it would be helpful for the legislature to fund a commission to examine the funding formula for the public defenders and state attorneys to determine if it accurately reflects the needs of these offices. This commission could report its findings to the legislature during the 1991 session.
[8] We note that the case of Yanke v. Polk County Board of Commissioners, No. 88-878-Civ-T-17, involving an indigent appellant being represented by the Public Defender for the Tenth Judicial Circuit, is currently pending in the United States District Court for the Middle District of Florida.
[9] It stands to reason that the employment of additional assistant public defenders to handle properly the appeals that are currently being filed will not take care of the backlog of delinquent appeals.
[10] The process of relieving the backlog of appeals will also put a heavy burden on the attorney general's office, as the agency responsible for handling criminal appeals for the state. That office may also require additional funding in order for these appeals to be processed expeditiously. Moreover, as the same problem exists, although to a lesser degree, in the other four districts, the legislature should also consider funding to handle the backlog of unbriefed appeals in those offices.
[11] Those indigent appellants who are not otherwise bondable and whose appellate briefs are at least sixty days' overdue may file petitions for writs of mandamus to compel the appointment of other counsel to handle their appeals. See Hatten v. State, 561 So.2d 562 (Fla. 1990).