709 So.2d 101 (1998)
In re PUBLIC DEFENDER'S CERTIFICATION OF CONFLICT AND MOTION TO WITHDRAW DUE TO EXCESSIVE CASELOAD AND MOTION FOR WRIT OF MANDAMUS.
Nos. 92636, 92534.
Supreme Court of Florida.
April 8, 1998.
*102 James Marion Moorman, Public Defender, and Deborah K. Brueckheimer, Chief, Appeals Division, Assistant Public Defender, Tenth Judicial Circuit, Bartow, for Petitioner in No. 92636.
Teddy N. Williams, Jr., County Attorney, and Paul G. Bangel, Senior Assistant County Attorney, Bradenton, for Manatee County, Amicus Curiae.
Robert A. Butterworth, Attorney General and Robert J. Krauss, Chief of Criminal Law, Senior Assistant Attorney General, Tampa, for Petitioner in No. 92534.
William J. Roberts of Nabors, Giblin & Nickerson, P.A., Tallahassee, Thomas J. Wilkes, President, Florida Association of County Attorneys, Inc. Orlando, and Suzanne T. Smith, Senior Assistant County Attorney for Pinellas County, Clearwater, for the Florida Association of Counties, Florida Association of County Attorneys, Inc. and Pinellas County, Amicus Curiae.
PER CURIAM.
We have for review an en banc order of the Second District Court of Appeal which addresses the problem of "hundreds of delinquent cases involving indigent defendants who are not receiving timely appellate review." In re Public Defender's Certification of Conflict and Motion to Withdraw due to Excessive Case Load and Motion for Writ of Mandamus, ___ So.2d ___, ___, slip op. at 3 (Fla. 2d DCA Feb. 13,1998).
This case concerns a major crisis that we have considered on an emergency basis to ensure that the legislature has notice of this problem and can consider providing emergency funding. The district court noted in its opinion that it is reviewing cases in which the defendants have served their prison sentences or have completed their probation before the appellate public defender's office has filed its briefs with that court. The order of the Second District was precipitated by a motion from the public defender for the Tenth Circuit to withdraw in 248 cases to which that office was currently assigned, due to what the public defender deemed to be "an excessive caseload." At oral argument, this Court was advised that the number of cases presently delinquent exceeds 640.
As a solution to this significant constitutional problem of an indigent's right to counsel, the Second District, relying on our decisions in In re Order on Prosecution of Criminal Appeals by the Tenth Judicial Circuit Public Defender, 561 So.2d 1130 (Fla.1990), and In re Certification of Conflict in Motions to Withdraw filed by the Public Defender of the Tenth Judicial Circuit, 636 So.2d 18 (Fla.1994), ordered that, commencing May 1, 1998, the Public Defender of the Tenth Judicial Circuit shall accept no appellate cases until further order of the court and that the chief judges of the Sixth, Tenth, Twelfth, Thirteenth, and Twentieth Circuits shall appoint qualified attorneys to represent indigents in appeals arising in their respective circuits.
The district court acknowledged that its order would "put an enormous burden on the individual counties to pay appellate attorneys for indigent criminal defendants." In re *103 Public Defender's Certification of Conflict, ___ So.2d at___, slip op. at 4. It explained that its action was necessary because "[w]ithout this drastic step, this court has no hope of fulfilling its constitutional duty to provide meaningful review to the indigent criminal defendants filing appeals in this court." Id. at ___, at 5. The court then stated that its decision involved an issue of great public importance and certified the following question to this Court:
WHEN A BACKLOG HAS EXISTED IN A PUBLIC DEFENDER'S OFFICE FOR MANY YEARS AND THAT BACKLOG HAS RESULTED IN SERIOUS DELAYS IN THE APPEALS OF ALMOST ALL DEFENDANTS REPRESENTED BY THE PUBLIC DEFENDER, IF REPEATED ORDERS REMOVING THE PUBLIC DEFENDER FROM VERY OLD CASES HAVE NOT SOLVED THE PROBLEM, MAY THE DISTRICT COURT REMOVE THE PUBLIC DEFENDER FROM HIS STATUTORY RESPONSIBILITIES FOR NEW CASES AND REQUIRE THE COUNTIES TO BEAR THE BURDEN OF PERFORMING THE PUBLIC DEFENDER'S DUTIES UNTIL THE BACKLOG IS RELIEVED?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. The public defender and the attorney general of the State of Florida have each filed a petition for review. In addition, the affected counties sought and were allowed participation in this action. The Court heard oral argument.
This problem of substantial delays in the representation of indigents in both noncapital and capital cases is not a new issue before this Court. It is an issue that has been before us and other courts of this state on multiple occasions, involving this and other public defenders' offices, for the last eighteen years.[1] While the public defender of the Tenth Judicial Circuit has repeatedly had this problem, his office is not the only one in the state confronted by this serious constitutional problem. However, the problem is particularly significant in the Second District Court of Appeal because that court has a higher percentage rate of criminal appeals than the other district courts of appeal.
The facts in this record establish a significant problem of constitutional magnitude that must immediately be addressed. We do not want to face a situation where a significant number of defendants convicted of felony offenses must be released on bond because their appeals of right are not being timely addressed due to the lack of counsel required to be provided under the United States Constitution. We must provide an immediate short-term solution to this crisis. Accordingly, we approve the order of the Second District Court of Appeal, which provides as follows:
[I]t is
ORDERED that, commencing on May 1, 1998, and until further order of this court, the Public Defender of the Tenth Judicial Circuit shall accept no further appellate cases over which this court has jurisdiction. By the fifth of every month, beginning June 1998, the Public Defender of the Tenth Judicial Circuit shall provide this court with a list of cases that have been assigned to that office which are on appeal to this court, and in which that office has not filed appellate briefs. It is further
ORDERED that, as of May 1, 1998, all indigent defendants who appeal their cases to this court from the Sixth, Tenth, Twelfth, Thirteenth, and Twentieth Circuits *104 shall obtain appointed counsel through the following procedures:
1. The trial court shall direct that the attorney representing the indigent defendant in the trial court shall remain on the case until the appellate record is prepared;
2. Upon filing of the notice of appeal in a case over which this court has jurisdiction, if the indigent defendant would otherwise have been entitled to the services of the Public Defender of the Tenth Judicial Circuit, the trial attorney shall notify the chief judge of that circuit that the appeal has been filed and that an appellate attorney must be appointed to represent the indigent defendant;
3. If the chief judge is satisfied that the defendant is indigent and would otherwise be entitled to the appellate services of the Public Defender of the Tenth Judicial Circuit, the chief judge shall appoint a qualified attorney who is not an attorney in the Office of the Public Defender of the Tenth Judicial Circuit to represent the indigent defendant in the appeal no later than forty days after the filing of the notice of appeal; and
4. The attorney appointed by the chief judge shall file a notice of appearance with this court and, thereafter, timely process the appeal.
We additionally require that we be provided a status report from the chief judge of the Second District Court of Appeal, the public defender of the Tenth Judicial Circuit, and the attorney general of the State of Florida on September 1, 1998, with recommendations from each of them as to whether the order should be continued, modified, or terminated.
We further request that the legislature immediately consider providing an emergency fund to assist the fourteen counties affected by this order. We request that the public defender, the attorney general, and affected county officers make themselves available to the legislature to provide resource information. From our present statistical records, based on 1997 appellate filings in the Second District, there were 300 appeals filed for the four-month period of May, June, July, and August, 1997.
We strongly believe that there needs to be a long-term as well as a short-term solution, and, in this regard, we would encourage the creation of a special committee or commission by the legislature to examine the structure and funding of indigent representation in criminal cases. We firmly believe that this type of delay in the criminal justice process, as illustrated in this case, can be eliminated by a joint effort of all interested parties. This Court is very willing to participate and provide necessary resource assistance to develop a viable solution to this ongoing problem.
For the reasons expressed, and as modified by this opinion, we approve the order of the Second District Court of Appeal.
It is so ordered.
KOGAN, C.J., and SHAW, HARDING, WELLS, ANSTEAD and PARIENTE, JJ., concur.
OVERTON, J., concurs specially with an opinion in which WELLS, J., concurs.
OVERTON, Justice, specially concurring.
I write separately to suggest that the time has come to reevaluate the structure of how we provide public defender representation to indigent defendants as well as how we provide representation to death-sentenced defendants in collateral proceedings. I suggest that the following structural changes be considered.
First, the five district appellate offices should be eliminated and each public defender's office should represent the defendants within its jurisdiction in the trial court and also handle its own appeals. Under such a structure, I believe the representation in the appellate process would be more effective and efficient because trial counsel would be readily available for discussions and input with whomever is handling an appeal. Should insufficient funding force the public defender to request to withdraw in either trial or appellate cases, that public defender would then be accountable in its own community regarding the need for withdrawal. Originally, as I understand it, one of the major reasons for establishing only one appellate *105 section in each of the five district courts of appeal to handle public defender appeals was the cost of travel. However, technological advances should eliminate that concern, given the availability of teleconferencing and electronic mail. I strongly believe that requiring each public defender's office to handle its own appeals would result in better administrative accountability.
Second, each public defender's office should have a separate section, separately funded by the legislature, for conflict cases for both trial and appeal. In my view, the legislature should authorize these sections, if feasible, to be physically located in particular geographic areas where most of the conflict work must be conducted. These conflict sections could handle conflict cases for adjoining circuits. This would result in a reduction of the cost of retaining private attorneys to handle conflict cases. There are examples where, in noncapital cases, attorney's fees paid to private counsel have exceeded the annual salary for beginning public defenders.
Third, I suggest that these conflict sections be sufficiently funded to handle the capital collateral representation for death-sentenced defendants in other circuits. By requiring capital collateral representation to be provided by accountable, elected officials, the administration of those cases, including cost expenditures, should be more efficient.
In conclusion, these structural changes should provide better representation for indigent defendants, assist in alleviating problems counties are facing in paying for the cost of conflict counsel, provide a unified administrative structure for funding, and provide more effective administration of collateral representation in capital cases. With the implementation of such changes, the legislature should be better able to focus on other problems confronting the effective administration of our criminal justice system.
WELLS, J., concurs.
NOTES
[1] See, e.g., In Re Certification of Conflict in Motions to Withdraw Filed by Public Defender of the Tenth Judicial Circuit, 636 So.2d 18 (Fla.1994); Order on Motions to Withdraw Filed by Tenth Circuit Public Defender, 622 So.2d 2 (Fla. 2d DCA 1993); Skitka v. State, 579 So.2d 102 (Fla. 1991); In Re Order on Prosecution of Criminal Appeals by the Tenth Judicial Circuit Public Defender, 561 So.2d 1130 (Fla.1990); Hatten v. State, 561 So.2d 562 (Fla.1990); Day v. State, 570 So.2d 1003 (Fla. 1st DCA 1990); In Re Order on Prosecution of Criminal Appeals by the Tenth Circuit Public Defender, 523 So.2d 1149 (Fla. 2d DCA 1987); Haggins v. State, 498 So.2d 953 (Fla. 2d DCA 1986); Moorman v. Threadgill, 462 So.2d 573 (Fla. 2d DCA 1985); Escambia County v. Behr, 384 So.2d 147 (Fla.1980); In Re Directive to the Public Defender of the Eleventh Judicial Circuit of Florida, No. 60,513 (Fla. April 28, 1981); In Re Directive to the Public Defender of the Seventh Judicial Circuit of Florida, No. 60,514 (Fla. April 28, 1981); In Re Directive to the Public Defender of the Fifteenth Judicial Circuit of Florida, No. 60,515 (Fla. April 28, 1981).