PER CURIAM.
We review an order of the Circuit Court of the Eleventh Judicial Circuit permitting the Public Defender for Florida’s Eleventh Judicial Circuit (“PD11”) to decline representation in all future third-degree felony cases.

I. Background

In twenty-one criminal cases, PD11 filed motions seeking permission to be relieved of its statutory obligation to represent indigent defendants in noncapital felony cases. Each motion was accompanied by a certificate of conflict wherein PD11 claimed that underfunding led to excessive caseloads, which has prevented it from carrying out its legal and ethical obligations to indigent defendants. The twenty-one motions were consolidated and heard by the trial court. The State Attorney’s Office (“the State”) was denied standing to oppose PDll’s motions, but was allowed to participate as amicus curiae.
After an evidentiary hearing, the trial court found that PDll’s excessive caseload permitted only minimally competent representation and ordered that PD11 may decline all future representation of indigent defendants charged with third-degree felonies.[1] The trial court ordered the Office of Criminal Conflict and Civil Regional Counsel for the Third District (“Regional Counsel”) to represent the affected indigent defendants.[2]
On appeal, the State[3] requested a stay of the trial court’s order and PD11 suggested that the order be certified to our Supreme Court as either an issue of great public importance or as having a great effect on the proper administration of justice throughout the state. As this case implicates not only the manner in which the criminal justice system is structured and funded, but also constitutional separation of powers principles as well as the Sixth Amendment right to counsel in criminal cases, we granted the stay and certified the order to the Florida Supreme Court, which, in turn, dismissed for lack of jurisdiction. State v. Pub. Defender, Eleventh Judicial Circuit of Fla., 996 So.2d 213 (Fla.2008). We then set an expedited hearing schedule and invited amici curiae to submit briefs.

II. Standing

The trial court first addressed whether the State had standing to oppose *801 PDll’s motion. We review de novo the issue of standing. Sanchez v. Century Everglades, LLC, 946 So.2d 563, 564 (Fla. 3d DCA 2006); Payne v. City of Miami, 927 So.2d 904, 906 (Fla. 3d DCA 2005). Generally, standing “requires a would-be litigant to demonstrate that he or she reasonably expects to be affected by the outcome of the proceedings, either directly or indirectly.” Hayes v. Guardianship of Thompson, 952 So.2d 498, 505 (Fla.2006).
In ruling against the State’s standing, the trial court relied on In re Order on Prosecution of Criminal Appeals by Tenth Judicial Circuit Public Defender, 561 So.2d 1130 (Fla.1990) (“In re Prosecution ”) and Escambia County v. Behr, 384 So.2d 147, 150 (Fla.1980). These cases address the unrelated issue of whether a county’s financial stake in the withdrawal of an assistant public defender is sufficient, to grant the county standing to oppose a motion to withdraw. In re Prosecution, 561 So.2d at 1138 (“[T]he county need not be given an opportunity to be heard before the appointment of counsel, even though it will be the responsibility of the county to compensate private counsel.”). Under the former law, counties were required to fund the private attorneys, who were appointed by courts to replace assistant public defenders. Id. at 1137 (“The legislative history of ... Florida, makes it clear that the legislature never intended to relieve the counties of the obligation of paying for court-appointed attorneys in noncapital conflict cases.”). The counties’ obligation to fund replacement counsel has since shifted to the State of Florida. See Art. V, § 14(c), Fla. Const.; Crist v. Fla. Ass’n of Criminal Defense Lawyers, Inc., 978 So.2d 134, 138 (Fla.2008).
Here, unlike Behr and In re Prosecution, the State sought standing as a party to each of the twenty-one criminal cases. The State, as a party to the criminal cases, is treated by statute differently than the counties. Section 27.02, Florida Statutes, provides in pertinent part, “[t]he state attorney shall appear in the circuit and county courts within his or her judicial circuit and prosecute or defend on behalf of the state all suits, applications, or motions, civil or criminal, in which the state is a party.... ” § 27.02(1), Florida Statutes (2004). The State’s status as a party to the criminal cases, as well as its statutory obligation under section 27.02, distinguishes this case from Behr and In re Prosecution. Therefore, we hold that the State had standing to challenge the motions filed by PD11.

III. Excessive by any Reasonable Standard

The trial court determined that PDll’s caseload was excessive by any reasonable standard. Much of the evidentia-ry hearing was spent trying to ascertain the maximum number of cases a public defender should handle in a single year. The record indicates that there are a number of different ways to count such cases, and that they involve different workloads as some eases go on to an early plea, some are transferred when a private attorney is retained by the defendant, and others are ultimately assigned to drug court. Thus, even if the threshold for withdrawal could be defined as a certain number of open cases per attorney — and we do not believe it can be — no such figure was proven in this record. Nevertheless, the order on review did not select a particular standard, and instead found that, under any reasonable standard, PDll’s caseload was excessive.
We acknowledge the difficulty in selecting a single “correct” standard and do not believe that a magic number of cases exists where an attorney handling fewer than that number is automatically providing reasonably competent representation while *802 the representation of an attorney handling more than that number is necessarily incompetent. See In re Certification of Conflict in Mots, to Withdraw Filed by Pub. Defender of the Tenth Judicial Circuit, 636 So.2d 18, 21-22 (Fla.1994) (“In re Certification 1991 ”) (“[W]e do not believe that courts are obligated to permit the withdrawal automatically upon the filing of a certificate by the public defender reflecting a backlog in the prosecution of appeals.”). Moreover, even if such a number could be divined, it would certainly only have meaning when applied to an individual attorney and not an office as whole.

A. Aggregate Withdrawal

Determining conflicts of interest for an entire Public Defender’s Office based on aggregate calculations is extremely difficult without first having considered individual requests for withdrawal in particular cases. See In re Prosecution, 561 So.2d at 1138 (concluding that when a backlog of cases is so excessive that assistant public defenders cannot possibly handle their assigned cases, it is the responsibility of the affected public defender to individually move the court to withdraw). The conclusion in the aggregate, that a conflict of interest exists, inherently lacks the meaningful individualized information required by such a determination.
While it is well within the province of a trial court to determine whether counsel is sufficiently competent, this determination must occur on a case-by-case basis. “If the public defender deems it necessary to be relieved from other appeals, he [or she] should file a motion to withdraw in this court promptly upon [appointment]. Such motions will be considered on a case-by-case basis.... ” Crow v. State, 500 So.2d 171, 172 (Fla. 1st DCA 1986); Haggins v. State, 498 So.2d 958, 954 (Fla. 2d DCA 1986) (“The circuit courts can better determine on a case-by-case basis the possible prejudice to the defendants resulting from any delays....”). We find this reasoning persuasive and equally applicable to motions to withdraw made at the trial level.
Although our Supreme Court has previously approved of an order prohibiting prospectively the appointment of assistant public defenders, that case is distinguishable because relief was granted only after individual assistant public defenders had first been removed from representation and a backlog of cases had caused the delayed filing of appeals for almost all defendants in the Public Defender’s Office. In re Pub. Defender’s Certification of Conflict & Mot. to Withdraw Due to Excessive Caseload & Mot. for Writ of Mandamus, 709 So.2d 101 (Fla.1998) (“In re Ceiiification 1998”). Unlike In re Certification 1998, here, there has been no initial attempt at individualized withdrawal. Instead, PDll’s first attempt at withdrawal was by way of a motion to withdraw en masse.
In re Certification 1998 is also distinguishable from the present case by the type of harm claimed. The In re Certification 1998 Court was attempting to stem the tide of delayed appeals. Id. at 103. In contrast, PD11 presented evidence of excessive caseload and no more. To be sure, whenever an attorney is burdened with an excessive caseload, there exists the possibility of inadequate representation.[4] The possibility of these harms was discussed at the hearing below. However, there was no showing that individual attorneys were providing inadequate representation, nor do we believe this could have *803 been proven in the aggregate,' simply based on caseload averages and anecdotal testimony.[5] Brown v. State, 894 So.2d 137, 149 (Fla.2004) (“[T]he finding as to whether counsel was adequately prepared does not revolve solely around the amount of time counsel spends on the case ... and ... is a case-by-case analysis.”) (citing State v. Lewis, 838 So.2d 1102, 1113-14 n. 9 (Fla.2002)).

B. Rules Regulating The Florida Bar

PD11 posits that the only standard controlling whether assistant public defenders should withdraw is set forth in the Rules Regulating The Florida Bar (“RRFB”). R. Regulating Fla. Bar 4-1.1, 4-1.3, 4-1.4, 4-1.7, 4-1.16, and 4-3.2. The rules of professional conduct, however, are only meant to apply to attorneys, individually, and not the office of the Public Defender as a whole.
Several problems develop when an office of attorneys seeks to avoid future appointments on grounds that the office, on average, is already laboring under an excessive caseload. First, by viewing the claim of excessive caseload in the aggregate, a court fails to consider the particular skills and expertise of individual attorneys, thereby treating each attorney the same. Such analysis ignores the fact that varying education and experience enable each attorney to handle differing caseloads. Add to this, the disparity of time demanded depending on the type and complexity of a particular case, and an aggregate determination becomes even less meaningful. Second, an aggregate determination violates the spirit, if not also the express language, of the RRFB. See, e.g., R. Regulating Fla. Bar 4-1.7(a) (“a lawyer shall not represent a client if ....”) (emphasis added); R. Regulating Fla. Bar 4-1.7(b)(l) (“the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation ....”) (emphasis added); R. Regulating Fla. Bar 4-1.16 (“a lawyer shall not represent a client ....”) (emphasis added). Therefore, under the facts of this case, the determination of whether or not a conflict exists under the RRFB, must be made on an individual basis.

C. Section 27.5303, Florida Statutes (2007)

In 1990, the Florida Supreme Court determined that “[w]hen excessive caseload forces the public defender to choose between the rights of the various indigent criminal defendants he [or she] represents, a conflict of interest is inevitably created.” In re Prosecution, 561 So.2d at 1135. In 2004, the legislature promulgated, and in 2007 amended, section 27.5303, which permits assistant public defenders to withdraw from representation based on a conflict of interest. § 27.5303(l)(a), Fla. Stat. (2007).
If, at any time during the representation of two or more defendants, a public defender determines that the interest of those accused are so adverse or hostile that they cannot all be counseled by the public defender or his or her staff without a conflict of interest ... then the public defender shall file a motion to withdraw and move the court to appoint other counsel.
Id. The obligation to withdraw, however, is not without exception. “In no case shall the court approve a withdrawal by the public defender or criminal conflict and *804 civil regional counsel based solely upon inadequacy of funding or excess workload of the public defender or regional counsel.” § 27.5303(l)(d), Fla. Stat. (2007). Within section 27.5303, the Legislature provided guidance as to what constitutes a conflict of interest.
In determining whether or not there is a conflict of interest, the public defender or regional counsel shall apply the standards contained in the Uniform Standards for Use in Conflict of Interest Cases found in appendix C to the Final Report of the Article V Indigent Services Advisory Board dated January 6, 2004.
§ 27.5303(l)(e), Fla. Stat. (2007). The only conflicts addressed in appendix C are conflicts involving codefendants and certain kinds of witnesses or parties. Conspicuously absent are conflicts arising from underfunding, excessive caseload, or the prospective inability to adequately represent a client.
We must assume that when the Legislature drafted section 27.5303, it was aware of the prior state of the law. Williams v. Jones, 326 So.2d 425, 435 (Fla.1975) (noting the “principle of statutory construction which provides that the Legislature is presumed to know the existing law when it enacts a statute and is also presumed to be acquainted with the judicial construction of former laws on the subject concerning which a later statute is enacted”) (citing Collins Inv. Co. v. Metro. Dade County, 164 So.2d 806 (Fla.1964)).
Thus, when the Legislature promulgated a law, which prohibited withdrawal based on excessive caseload and which stated that the “conflict of interest” contemplated by section 27.5303 included only the traditional conflicts arising from the representation of codefendants, we must assume that the Legislature understood the existing law and intended to modify it. Here, PD11 failed to submit to the trial court any evidence that a “conflict of interest,” as described by section 27.5303(l)(e), existed.
The trial court did not reach the question of whether PD11 had presented evidence sufficient to prove a statutory conflict of interest, determining instead that section 27.5303(l)(d) did not apply because it addressed withdrawal from representation, rather than what PD11 sought, which was to have other counsel appointed in the first instance. We find this distinction unpersuasive for two reasons.
First, permitting PD11 to withdraw by merely couching its requests as motions to decline future appointments, would circumvent the plain language of section 27.5303(l)(d). We cannot allow such an exercise in semantics to undo the clear intent of the statute. Gannett Co. v. Anderson, 947 So.2d 1, 8 (Fla. 1st DCA 2006). If we did, section 27.5303(l)(d) would be rendered meaningless. Forsythe v. Longboat Key Beach Erosion Control Dist, 604 So.2d 452, 456 (Fla.1992) (“[C]ourts should avoid readings that would render part of a statute meaningless.”).
Second, given that the trial court’s order requires PD11 to accept appointments at first appearances and continue representation until arraignment, it is fanciful to suggest that the subsequent appointment of alternate counsel is anything other than a withdrawal.[6]
*805 That is not to say that an individual attorney cannot move for withdrawal when a client is, or will be, prejudiced or harmed by the attorney’s ineffective representation. However, such a determination, absent individualized proof of prejudice or conflict other than excessive caseload, is defeated by the plain language of the statute. § 27.5303(l)(a) and (d), Fla. Stat. (2007).

D. Funding

PDll’s complaint that it receives inadequate funding is not novel. See, e.g., In re Certification 1998; In re Certification 1991; Flatten v. State, 561 So.2d 562 (Fla. 1990); In re Prosecution. Nor is our response.
[Wjhile it is true that the legislature’s failure to adequately fund the public defenders’ offices is at the heart of this problem, and the legislature should live up to its responsibilities and appropriate an adequate amount for this purpose, it is not the function of this Court to decide what constitutes adequate funding and then order the legislature to appropriate such an amount. Appropriation of funds for the operation of government is a legislative function.
In re Prosecution, 561 So.2d at 1136 (citing Art. VII, § 1(c), Fla. Const.).
Finally, we note that since 2005, PD11 has not filled at least sixteen full-time attorney positions that were funded by the legislature. For example, during the 2005-06 fiscal year, PD11 accepted $401,572, but did not fill seven full-time attorney positions. During the 2006-07 fiscal year, PD11 accepted $338,843, but did not fill six full-time attorney positions. During fiscal year 2007-08, PD11 accepted $138,602, but did not fill three full-time attorney positions. During the hearing, Public Defender Bennett H. Brummer acknowledged that he opted to increase employee salaries rather than hire additional staff. Similarly, statewide funding figures for the Public Defender Offices similarly reveal an increased funding of 14% from 2004-2008, while their full-time employees increased by only 2%.[7]
Although PDll’s budget decreased during the past fiscal year,[8] the record does not demonstrate any correlation between the State budget reductions and a complete inability on the part of PD11 to handle any third-degree felony cases. For example, the act of withdrawing from representation in approximately 11,693 third-degree felony cases (the result of the ruling below), which constitutes 60% of the post-arraignment cases handled by PDll’s 94 noncapital felony attorneys,[9] is entirely disproportionate to the amount of the budget reductions. There is simply insufficient evidence to support such a drastic remedy.

TV. Conclusion

We understand the difficulties faced by PD11. With an ever-increasing quantity of cases and a tight budget, their important *806 task is certainly made more difficult. The office-wide solution to the problem, however, lies with the legislature or the internal administration of PD11, not with the courts.
“We believe that within the existing statutory framework there exists a method for resolving the problem of excessive caseload.” In re Prosecution, 561 So.2d at 1134. Only after an assistant public defender proves prejudice or conflict, separate from excessive caseload, may that attorney withdraw from a particular case. § 27.5303(l)(a), Fla. Stat. (2007) (“The court shall deny the [assistant public defender’s] motion to withdraw if the court finds the grounds for withdrawal are insufficient or the asserted conflict is not prejudicial to the indigent client.”).
Reversed.
CORTIÑAS and SALTER, JJ., concur.

. Originally, the trial court allowed PD 11 to decline all "C” cases. Upon motion for clarification, the trial court explained that by "C" cases, it meant third-degree felony cases.

. Eight days after the trial court issued its order, Regional Counsel moved to intervene. The trial court denied its motion as untimely. Regional Counsel appealed that order, consol-¡dated here as Case No. 3D08-2537. We affirm the trial court’s denial of Regional Counsel's motion to intervene as it was filed eight days after the trial judge's order, which is the subject of this appeal.

.The State of Florida is represented by the Florida Attorney General's Office on appeal.

. We note, as the State did at the hearing below, that contrary to PDll’s claim that its attorneys are providing inadequate representation, as recently as 2007, PD 11 has received national recognition for its representation of indigent defendants.

. While the anecdotal claims of prejudice made by one assistant public defender who testified at the hearing below might be an important part of an individualized determination that a particular assistant public defender is providing inadequate representation, it falls far short of proving that each attorney at PD 11 is providing inadequate representation.

. PDl 1 has created a system whereby one set of PD 11 attorneys, the Early Representation Unit (“ERU”), represents defendants from first appearance until arraignment, at which time representation shifts to a different set of PD 11 attorneys. The order under review leaves undisturbed this system. Where, in the normal course of events, the representation of a defendant passed at arraignment from an ERU attorney to another PDl 1 attorney, there *805 was no withdrawal because representation remained at all times with PD 11. Here, however, the transfer of representation to a non-PD11 attorney inevitably requires the PD 11 attorney to withdraw.

.During the same time period, the State Court System and the Offices of the State Attorneys each received funding increases of 13%, which they used to increase the number of full-time employees by 4% and 5%, respectively.

. The budget for the entire PD 11 office (excluding trust funds) actually increased from fiscal year 2004-05 through fiscal year 2007-OS.

. According to a September 15, 2008 affidavit filed in this case, PD 11 identified that it handled approximately 19,488 noncapital felony cases, of which 11,693 were third-degree felony cases.