POLSTON, C.J.,
concurring in part and dissenting in part.
I agree with the majority that section 27.5303(l)(d), Florida Statutes (2007), is applicable and not unconstitutional. I also agree that the State Attorney’s Office has standing in these proceedings. However, unlike the majority, I do not believe that the Public Defender’s Office for the largest circuit in Florida should be permitted to withdraw from 60% of its cases by testifying that, due to its high caseload, attorneys may possibly end up violating the Florida Bar rules. See majority op. at 279. Instead, because there has been no proof of harm (or even proof of the likelihood of imminent harm) to individual defendants’ constitutional rights due to excessive caseload, I would approve the Third District’s decisions reversing withdrawal. See In re Order on Prosecution of Criminal Appeals by the Tenth Judicial Circuit Public Defender, 561 So.2d 1130, 1132 (Fla.1990) (ap *284 proving withdrawal upon finding, due to excessive caseload and underfunding, the existence of actual or imminent harm to defendants’ constitutional rights); see also Luckey v. Harris, 860 F.2d 1012, 1017 (11th Cir.1988) (explaining, in a suit for injunctive relief from alleged constitutional deficiencies of indigent defense services, that “the plaintiffs burden is to show ‘the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law’ ”) (quoting O’Shea v. Littleton, 414 U.S. 488, 502, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).
The Third District accurately explained the following:
To be sure, whenever an attorney is burdened with an excessive caseload, there exists the possibility of inadequate representation. The possibility of these harms was discussed at the hearing below. However, there was no showing that individual attorneys were providing inadequate representation, nor do we believe this could have been proven in the aggregate, simply based on caseload averages and anecdotal testimony.
State v. Public Defender, Eleventh Judicial Circuit, 12 So.3d 798, 802-03 (Fla. 3d DCA 2009) (footnotes and citation omitted). Moreover, “[rjemember, not a single client of PD-11 has objected to the representation being received by him or her on anything close to the grounds being urged by PD-11 to shift representation outside its offices.” Id. at 806 n. 10 (Shepherd, J., specially concurring).
Rather than proving actual (or the likelihood of imminent) violations of individual defendants’ constitutional right to effective representation, the Public Defender’s Office presented general evidence regarding the average caseload of its attorneys, its lack of funding, and its difficulties in hiring new attorneys. For example, Mr. Brum-mer testified to a belief that the Office’s assistant public defenders must be rendering ineffective assistance of counsel given the average caseload numbers, numbers that he described as higher than several aspirational caseload goals which have not been approved for use in Florida courts. Mr. Brummer also testified that he had unsuccessfully sought increased funding from the Legislature in the years leading up to this litigation. The Office’s general counsel then opined that the Office lacks the resources necessary to render effective assistance of counsel under the sixth amendment, while a senior supervisor stated that he did not have enough time to fully investigate all of his cases and see all of his clients. Further, an assistant public defender, with no explanation of how it actually harms individual defendants’ constitutional rights, anecdotally stated that she had 62 felony cases and did not have enough time to discuss everything she wished with her clients or to go to the crime scenes herself. Moreover, in the Bowens case, the assistant public defender asserted that his high caseload prevented him from providing effective assistance to Bowens and that he would have to seek a continuance to properly prepare the case for trial, but the assistant public defender did not explain exactly how Bowens would be denied effective representation with a continuance.
None of this constitutes competent substantial evidence of actual (or imminent) violations of individual defendants’ constitutional rights due to excessive caseload or underfunding. Cf. In re Order on Prosecution of Criminal Appeals, 561 So.2d at 1131 n. 2 (describing evidence of a violation of the constitutional rights to timely appeals and equal protection due to excessive caseload and underfunding, including that an indigent defendant served her full three-year sentence before her appeal was considered); Luckey, 860 F.2d *285 at 1018 (explaining that the appellants have alleged and will have to demonstrate “that systemic delays in the appointment of counsel deny them their sixth amendment right to the representation of counsel at critical stages in the criminal process, hamper the ability of their counsel to defend them, and effectively deny them their eighth and fourteenth amendment right to bah, that their attorneys are denied investigative and expert resources necessary to defend them effectively, that their attorneys are pressured by courts to hurry their case to trial or to enter a guilty plea, and that they are denied equal protection of the laws”). Nor does the generalized and speculative testimony presented by the Public Defender’s Office constitute competent substantial evidence that public defenders face the substantial risk of violating their ethical and professional obligations under the Florida Bar rules.
I agree with the Third District that this “is not to say that an individual attorney cannot move for withdrawal when a client is, or will be, prejudiced or harmed by the attorney’s ineffective representation.” Public Defender, 12 So.3d at 805. However, such a determination requires “individualized proof of prejudice or conflict [due to] excessive caseload,” id., as well as a judicial determination regarding individual defendants. See generally State v. Peart, 621 So.2d 780, 788 (La.1993) (requiring individual hearings regarding the constitutionality of indigent services due to excessive caseload and underfunding for individual defendants and explaining, “because there is no precise definition of reasonably effective assistance of counsel, any inquiry into the effectiveness of counsel must necessarily be individualized and fact-driven”). In fact, even where this Court has previously approved office-wide relief, that “relief was granted only after individual assistant public defenders had first been removed from representation and a backlog of cases had caused the delayed filing of appeals for almost all defendants in the Public Defender’s Office.” Public Defender, 12 So.3d at 802 (citing In re Pub. Defender’s Certification of Conflict & Motion to Withdraw Due to Excessive Caseload & Motion for Writ of Mandamus, 709 So.2d 101 (Fla.1998)).
Additionally, the majority’s decision today permitting aggregate withdrawal without individualized proof of constitutional harm leaves open the potential continuation of the improper remedy implemented by the trial court, where the judiciary will essentially be managing the Public Defender’s Office. For example, the trial court’s order mandates that “PD-11 [is] to decline to accept appointments to ‘C’ felony cases until such time as this Court determines that PD-11 is able to resume its constitutional duties with respect to these cases.” (Emphasis added.) Moreover, the trial court orders the Public Defender’s Office “to continue its bond hearing duties for all cases on a limited basis only.” The trial court order also dictates that “[a]ll sides must cooperate on a daily basis in the 23 divisions in trying to amicably resolve cases while being realistic about the strength of each of their positions.” Even more invasively on an ongoing basis, the trial court’s order mandates that “[t]his matter will be set for a recurring 60 day review with weekly [assistant public defender caseload sheets] to be submitted to the Court to allow it to monitor the status of PD-ll’s caseload.” This ongoing judicial involvement in overseeing the internal affairs of the Public Defender’s Office is not only impractical but also creates constitutional separation of powers problems. See art. II, § 3, Fla. Const. (“No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly pro *286 vided herein.”); art. V, § 18, Fla. Const. (“In each judicial circuit a public defender shall be elected for a term of four years, who shall perform duties prescribed by general law.”) (emphasis added).
To summarize, because there has been no proof of actual (or the likelihood of imminent) harm to individual defendants’ constitutional rights due to excessive caseload and underfunding, I would approve the Third District’s decisions reversing withdrawal. Accordingly, I respectfully concur in part and dissent in part.
CANADY, J., concurs.