QUINCE, J.
This matter is before the Court for review of the decisions of the Third District Court of Appeal in State v. Public Defender, Eleventh Judicial Circuit, 12 So.3d 798 (Fla. 3d DCA 2009), and State v. Bowens, 39 So.3d 479 (Fla. 3d DCA 2010).[1] We accepted review in Public Defender because the decision directly affects a class of constitutional officers, namely public defenders. In Bowens, the district court ruled upon the following question, which the court certified to be of great public importance:
Whether section 27.5303(l)(d), Florida Statutes (2007), which prohibits a trial court from granting a motion for withdrawal by a public defender based on *265 “conflicts arising from underfunding, excessive caseload or the prospective inability to adequately represent a client,” is unconstitutional as a violation of an indigent client’s right to effective assistance of counsel and access to the courts, and a violation of the separation of powers mandated by Article II, section 3 of the Florida Constitution as legislative interference with the judiciary’s inherent authority to provide counsel and the Supreme Court’s exclusive control over the ethical rules governing lawyer conflicts of interest?
Bowens, 39 So.3d at 482. We have jurisdiction in both cases. See art. V, § 3(b)(3), (4), Fla. Const. For the reasons stated below, we quash the decision of the Third District in Public Defender and quash in part and affirm in part the decision in Bowens. We also remand to the trial court for a determination of whether the circumstances still warrant granting the Public Defender’s motion to decline appointments in future third-degree felony cases under the standards approved in this decision.
I. FACTS AND PROCEDURAL HISTORY
The Public Defender for the Eleventh Judicial Circuit (the Public Defender) filed motions in twenty-one criminal cases seeking to be relieved of the obligations to represent indigent defendants in non-capital felony cases. The Public Defender certified a conflict of interest in each case, claiming that excessive caseloads caused by underfunding meant the office could not carry out its legal and ethical obligations to the defendants. The trial court consolidated all of the motions and denied the State Attorney’s Office (the State) standing to oppose the Public Defender’s motions. The trial court did allow the State to participate in the proceedings as amicus curiae. The trial court determined that the Public Defender’s caseload was excessive by any reasonable standard and that this excessive caseload only allowed the Public Defender to provide minimally competent representation. The trial court issued an order permitting the Public Defender to decline appointments in future third-degree felony cases, although the Public Defender was still required to represent those defendants through arraignment. See Public Defender, 12 So.3d at 804.
The State appealed to the Third District Court of Appeal, which stayed the trial court’s order and certified the order on appeal as having a great effect on the proper administration of justice throughout the state and requiring immediate resolution by this Court. See art. V, § 3(b)(5), Fla. Const. This Court dismissed the case for lack of jurisdiction. See State v. Public Defender, Eleventh Judicial Circuit, 996 So.2d 213 (Fla.2008) (table). The Third District then entered its decision in the instant case, in which it reversed the trial court’s order. Public Defender, 12 So.3d at 805-06. The Third District made a number of legal conclusions in its decision. First, the district court concluded that the State did have standing to oppose the motion in the trial court, based on section 27.02(1), Florida Statutes (2007),[2] which gives the State standing to oppose all motions in cases in which it is a party. Id. at 801. Second, the Third District concluded that the Public Defender’s withdrawal from a case based on conflict must be determined on a *266 case-by-case basis, and not in the aggregate. Id. at 802-08. Third, the Third District dismissed the Public Defender’s argument that the Rules Regulating the Florida Bar should be the governing standard to determine whether withdrawal is appropriate. The Third District determined that the rules did not apply to the Public Defender’s Office as a whole, but rather to individual attorneys. Id. at 803. Fourth, the Third District concluded that excessive caseloads do not constitute a conflict of interest under section 27.5808, Florida Statutes (2007), because the Legislature had not included excessive caseload as part of the its definition of conflicts of interest. Contrary to the trial court’s ruling, the Third District concluded that section 27.5303 was applicable in this case because there is no distinction between withdrawing from cases and declining new appointments under the clear meaning of the statute and the structure of the Public Defender’s Office.[3] Id. at 803-05. Finally, in considering the issue of underfunding, the Third District noted that the Public Defender had failed to hire new attorneys since 2005, despite receiving funding from the Legislature for such positions. The Third District found insufficient evidence to conclude that a small budget decrease would require a dramatic decrease in the Public Defender’s caseload. Id. at 805. This Court accepted review of the Third District’s decision on the basis that it expressly affects a class of constitutional officers.
In Bowens, 39 So.3d at 480, assistant public defender Jay Kolsky filed a motion to withdraw from representing defendant Antoine Bowens. The motion alleged that the excessive caseload of the assigned public defender created a conflict of interest. The Public Defender also challenged the constitutionality of section 27.5303(l)(d), Florida Statutes (2007),[4] the statute that excludes excessive caseload as a ground for withdrawal. After an evidentiary hearing, the circuit court granted the motion to withdraw, finding that the public defender had demonstrated adequate, individualized proof of prejudice to Bowens as a direct result of Kolsky’s workload. However, the circuit court denied the constitutional challenge. On certiorari review, the Third District quashed the trial court’s order granting the attorney’s motion to withdraw. The Third District held that prejudice or harm to a client must be made on a case-by-case basis with individualized proof, which does not include excessive caseload. The Third District also upheld the constitutionality of the statute. However, because this Court had granted review in Public Defender, SC09-1181, the Third District certified the question of great public importance to this Court. Bowens, 39 So.3d at 482. This Court voted to grant review and granted the Public Defender’s motion to consolidate the two cases for all purposes.
II. ANALYSIS
In order to address the various issues raised in this case, we first review the history and law regarding indigent criminal defense. Criminal defendants are guaranteed the right to effective assistance of counsel under the Sixth Amendment to *267 the United States Constitution, see Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and article I, section 16 of the Florida Constitution. In addition, “the right to effective assistance of counsel encompasses the right to representation free from actual conflict.” Hunter v. State, 817 So.2d 786, 791 (Fla.2002). Conflict of interest cases usually arise at the trial level, hut can arise at any level of the judicial process where one attorney represents two or more clients. See Barclay v. Wainwright, 444 So.2d 956, 958 (Fla.1984) (granting habeas relief based on appellate counsel’s conflict of interest in representing two codefendants). Generally, an attorney has an ethical obligation to avoid conflicts of interest and should advise the court when one arises. See Cuyler v. Sullivan, 446 U.S. 335, 346, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). An actual conflict of interest that adversely affects a lawyer’s performance violates a defendant’s Sixth Amendment right to effective assistance of counsel. Id. at 348, 100 S.Ct. 1708.
In an effort to meet its responsibility to provide counsel to indigent defendants, as guaranteed under the Sixth Amendment and applied to the states in Gideon v. Wainwright, the Florida Legislature first established the office of the Public Defender in 1963. See ch. 63-409, § 1, Laws of Fla. (enacting section 27.50, Florida Statutes (1963), which created the office of the Public Defender). The Legislature subsequently approved a proposal to amend the Florida Constitution and elevate the Office of the Public Defender to the level of a constitutional officer, which was approved by the electorate and adopted in 1972. See art. V, § 18, Fla. Const.; see also Summary of Amendment Revising Florida Court Structure, Senate Joint Res. No. 52D (noting that “[t]he position of public defender gains constitutional status” in article V in the 1972 amendment).
The public defender in each circuit is primarily responsible for representing indigent defendants who have been charged or arrested for an enumerated list of criminal offenses and in a limited number of civil proceedings. See § 27.51(1), Fla. Stat. (2007). However, in those cases where the public defender has a conflict of interest, the Legislature provided for the appointment of the Office of Criminal Conflict and Civil Regional Counsel (RCC). See § 27.511(5), Fla. Stat. (2007).
The statutory provision governing withdrawal by the public defender based on conflicts of interest was originally contained in section 27.53(3). Until its amendment in 1999, section 27.53 required a trial court to grant a public defender’s motion to withdraw based on conflict without conducting any factual inquiry. In Guzman v. State, 644 So.2d 996 (Fla.1994), we reversed a defendant’s conviction for first-degree murder and his death sentence because the trial court erroneously denied the public defender’s motion to withdraw based on conflicts of interest between Guzman and other clients of the public defender’s office. Id. at 997. We concluded that once a public defender moves to withdraw under section 27.53(3), based on a conflict due to adverse or hostile interests between two clients, the trial court must grant separate representation. Id. at 999.
Following our decision in Guzman, the Legislature amended section 27.53(3) to provide that under such circumstances the public defender shall file a motion to withdraw and the court
shall review and may inquire or conduct a hearing into the adequacy of the public defender’s representations regarding a conflict of interest without requiring the disclosure of any confidential communications. The court shall permit with *268 drawal unless the court determines that the asserted conflict is not prejudicial to the indigent client. If the court grants the motion to withdraw, it may appoint [a member of the Bar] ... to represent those accused.
Ch. 99-282, § 1, at 3084-85, Laws of Fla. (emphasis added). The staff analysis of the bill specifically references this Court’s opinion in Guzman, noting that “[although the statute uses permissive language, according to the Florida Supreme Court, when a public defender certifies that there is conflict of interest, the trial court must grant the motion to withdraw ... [and] may not reweigh the facts that gave rise to the public defender’s determination that a conflict exists.” Fla. H.R. Comm, on Crime & Pun., CS for HB 327 (1999) Staff Analysis 2 (finai June 14, 1999). The amended statute provided for a court to review the adequacy of the public defender’s representations as to conflict and to inquire further, if necessary. Thus, the amendment was intended to change this Court’s previous interpretation of how motions to withdraw should be handled. Under the amended statute, a court was no longer required to automatically grant a public defender’s motion to withdraw based upon an assertion of conflict. In fact, the court is specifically charged with reviewing the motion and making a determination of whether the asserted conflict is prejudicial to the client.
Effective July 2004, this provision was moved to section 27.5303 as part of a comprehensive bill dealing with the implementation of Revision 7 to Article Y of the Florida Constitution. See eh.2003-402, § 19, at 3668-70, Laws of Fla. The staff analysis dealing with “Conflict motions” states that the bill “expressly directs judges to look into the adequacy of the motion to withdraw due to an ethical conflict.” Fla. H.R. Comm, on Approp., HB 113A (2003), Staff Analysis 7 (May 14, 2003). The analysis also notes that “Currently, there appears to be some difference of opinion concerning the extent to which the court can inquire into the sufficiency of a motion filed by a public defender to withdraw from representation due to an ethical conflict of interest.” Id. Additionally, the new provision contained a subsection providing that “[i]n no case shall the court approve a withdrawal by the public defender based solely upon inadequacy of funding or excess workload of the public defender.” Ch.2003-402, § 19, at 3669, Laws of Fla. This prohibition was originally codified in section 27.5303(l)(c), Florida Statutes (2003), but was subsequently moved to subsection (l)(d) in the 2007 amendment to the statute. See ch.2007-62, § 10, at 446, Laws of Fla.
Section 27.5303(l)(d) is the primary provision at issue in this case. The parties have raised several issues relating to this subsection, including whether the statutory prohibition usurps the courts’ inherent authority to protect the constitutional rights of indigent defendants to effective counsel and whether the statute conflicts with a lawyer’s professional obligation to provide effective assistance and to inform the court of obstacles to that obligation. The parties also disagree on the standard for assessing whether the grounds asserted for withdrawal are sufficient, whether aggregate relief can be granted or must be handled on a case-by-case basis, what constitutes sufficient proof under the statute, and whether motions seeking to decline future appointments constitute withdrawals under the statute.
Applicability of Section 27.5303(l)(d)
The initial issue that we must address is whether section 27.5303(l)(d) is even applicable in this case. This subsection of the statute provides that “[i]n no case shall the court approve a withdrawal by the public *269 defender or criminal conflict and civil regional counsel based solely upon inadequacy of funding or excess workload of the public defender or regional counsel.” § 27.5303(l)(d), Fla. Stat. (2007) (emphasis added). The Public Defender contends that this subsection is not applicable to this case because the motion he filed was not a motion to withdraw, but rather a motion to decline future appointments. The State responds that this is an “exercise in semantics” that circumvents the intent of the statute and cites the reasoning of the Third District in this regard. See Public Defender, 12 So.3d at 804.
The Public Defender’s motion in the trial court was styled as “Motion to Appoint Other Counsel in Unappointed Noncapital Cases Due to Conflict of Interest.” In its memorandum of law in support of the motion, the Public Defender argued that because the plain language of section 27.5303(l)(d) governed motions to withdraw and his office was not moving to withdraw from any case to which it was currently assigned, the statute was not applicable to this situation. The trial court’s order granting in part and denying in part the Public Defender’s motion does not acknowledge section 27.5303 at all. The Third District found the withdraw/decline distinction to be unpersuasive for two reasons. First, permitting the Public Defender “to withdraw by merely couching its requests as motions to decline future appointments, would circumvent the plain language of section 27.5303(l)(d).” Public Defender, 12 So.3d at 804. The Third District stated that such an “exercise in semantics” would “undo the clear intent of the statute” and render section 27.5303(l)(d) meaningless. Id. Second, because the trial court’s order required the Public Defender to accept appointments at first appearances and continue to represent those defendants until arraignment, it was “fanciful to suggest that the subsequent appointment of alternate counsel is anything other than a ■withdrawal.” Id. (footnote omitted). As mentioned above, the Eleventh Circuit Public Defender’s Office has created a system whereby one set of attorneys, the Early Representation Unit (ERU), represents clients from first appearance until arraignment and then representation shifts to another set of attorneys. Under normal circumstances, the representation of a defendant passes at arraignment from an ERU attorney to another attorney in the public defender’s office. Thus, under normal circumstances there is no withdrawal because representation remains at all times with the Public Defender. Under the trial court’s order here, the ERU representation would remain intact, but representation would transfer to a non-public defender attorney at arraignment. Thus, the Third District concluded, the public defender attorney from the ERU would have to withdraw in all of these cases. Public Defender, 12 So.3d at 804 n. 6.
The statutes governing the public defenders and their duties support the Third District’s conclusion that motions to decline future appointments are in essence motions to withdraw, which are governed by section 27.5303. Section 27.40(1) mandates that “the court shall appoint a public defender to represent indigent persons.” § 27.40(1), Fla. Stat. (2007) (emphasis added). Section 27.51(1) provides that the public defender “shall represent ... any person determined to be indigent” who is under arrest or charged with various criminal offenses that could result in imprisonment. § 27.51(1), Fla. Stat. (2007). To be relieved of these duties, even as to future cases, the public defender would have to seek court approval to be removed.
In In re Certification of Conflict in Motions to Withdraw Filed by Public Defend *270 er of the Tenth Judicial Circuit, 636 So.2d 18 (Fla.1994), we considered the report and recommendations of a Special Commissioner appointed to consider a motion of the Public Defender to withdraw from a large number of overdue appeals. Among the commissioner’s recommendations was the “[ajdoption of a prospective withdrawal procedure ... to allow the Public Defender to withdraw early based on a recognition that the cases cannot be timely handled in the future.” Id. at 21. This Court declined to take action on the “adoption of a prospective withdrawal system” and instead referred the commissioner’s suggestions to the appropriate committees of The Florida Bar for study. Id. at 22. However, we clearly labeled the motion to decline future appointments as a motion for “prospective withdrawal,” id., which would subject such motions to the dictates of section 27.5303.
However, as discussed in more detail below, section 27.5303 should not be interpreted to proscribe courts from considering or granting motions for “prospective withdrawal” when necessary to safeguard the constitutional rights of indigent defendants to have competent representation. “[W]hen understaffing creates a situation where indigent [defendants] are not afforded effective assistance of counsel, the public defender may be allowed to withdraw.” Day v. State, 570 So.2d 1003, 1004 (Fla. 1st DCA 1990). See also In Re Order on Prosecution of Criminal Appeals by the Tenth Judicial Circuit Public Defender, 561 So.2d 1130, 1135 (Fla.1990) (“When excessive caseload forces the public defender to choose between the rights of the various indigent criminal defendants he represents, a conflict of interest is inevitably created.”) (emphasis added); Escambia Cnty. v. Behr, 384 So.2d 147, 150 (Fla.1980) (England, C.J., concurring) (“The problem of excessive caseload in the public defender’s office should be resolved at the outset of representation, rather than at some later point in a trial proceeding.”) (emphasis added).
Scope of Relief
Each of the parties in this case has taken a diametrically opposed position as to the scope of relief that may be addressed in a motion to withdraw under section 27.5303. The State argues that aggregate relief cannot be afforded and such motions are not intended to address systemic relief. Instead, the State argues that each incidence of conflict must be addressed on a case-by-case basis. The Third District specifically concluded that “[t]he office-wide solution to the problem ... lies with the legislature or the internal administration of [the Eleventh Circuit Public Defender], not with the courts.” Public Defender, 12 So.3d at 806. Additionally, the Third District noted that the Legislature provided guidance within section 27.5303(l)(e) as to what constitutes a conflict of interest for purposes of withdrawal by the public defender. Subsection (l)(e) directs that in “determining whether or not there is a conflict of interest, the public defender or regional counsel shall apply the standards contained in the Uniform Standards for Use in Conflict of Interest Cases found in appendix C to the Final Report of the Article V Indigent Services Advisory Board dated January 6, 2004.” § 27.5303(l)(e), Fla. Stat. (2007). The Third District noted that the only conflicts addressed in the appendix are “conflicts involving codefendants and certain kinds of witnesses or parties. Conspicuously absent are conflicts arising from underfunding, excessive caseload, or the prospective inability to adequately represent a client.” Public Defender, 12 So.3d at 804. Thus, the Third District concluded that the only conflicts of interest contemplated by section 27.5303 are “traditional *271 conflicts arising from the representation of codefendants.” Id.
The Public Defender, and many of the amicus curiae who have filed briefs in these cases, contend that systemic or aggregate prospective relief is required by the Florida Rules of Professional Conduct and by the Sixth Amendment rights of indigent defendants. Additionally, they argue that the courts have inherent authority to issue such relief when necessary to fulfill their constitutional obligations.
The Public Defender also contends that a number of Rules of Professional Conduct are implicated in this case[5] and are at odds with the Third District’s interpretation of section 27.5308(l)(d). “The Rules provide no exception for lawyers who represent indigent persons charged with crimes.” ABA, “Ethical Obligations of Lawyers Who Represent Indigent Criminal Defendants When Excessive Caseloads Interfere with Competent & Diligent Representation,” Formal Opinion 06-441, at 3. Furthermore, “the public defender is an advocate, who once appointed owes a duty only to his client, the indigent defendant. His role does not differ from that of privately retained counsel.” Crist v. Florida Ass’n of Criminal Defense Lawyers, Inc., 978 So.2d 134, 147 (Fla.2008) (quoting Schreiber v. Rowe, 814 So.2d 396, 398 (Fla.2002)). “All attorneys, whether state-supplied or privately retained, are under the professional duty not to neglect any legal matters entrusted to them.” State v. Meyer, 430 So.2d 440, 443 (Fla.1983) (citing Rule 4-1.3, Rules Regulating Fla. Bar (Diligence) formerly Fla. Bar Code Prof. Resp. D.R. 6-101(A)(3)). Whether an indigent defendant is represented by an elected public defender, the appointed regional counsel, or a private attorney appointed by the court, the attorney has an independent professional duty to “effectively” and “zealously” represent his or her client. Crist, 978 So.2d at 147. See also Wilson v. Wainwright, 474 So.2d 1162, 1164 (Fla.1985) (“[T]he basic requirement of due process in our adversarial legal system is that a defendant be represented in court, at every level, by an advocate who represents his client zealously ■within the bounds of the law. Every attorney in Florida has taken an oath to do so and we will not lightly forgive a breach of this professional duty in any case.”).
The parties also contend that “[the] courts have authority to do things that are absolutely essential to the performance of their judicial functions.” Rose v. Palm Beach Cnty., 361 So.2d 135, 137 (Fla.1978). This authority emanates from the courts’ constitutional powers set forth in the Florida Constitution. See art. II, § 3, Fla. Const. (“The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided therein.”); art. V, § 1, Fla. Const. (“The judicial power shall be vested in a supreme court, district courts of appeal, circuit courts and county courts.”). This doctrine of inherent judicial power “exists because it is crucial to the survival of the judiciary as an independent, functioning and co-equal branch of government. The invocation of the doctrine is most eompel- *272 ling when the judicial function at issue is the safe-guarding of fundamental rights.” Maas v. Olive, 992 So.2d 196, 204 (Fla.2008) (Olive II) (quoting Rose, 361 So.2d at 137).
We cited the doctrine of inherent judicial authority in considering the statutory scheme in sections 27.710 and 27.711 of the Florida Statutes (2007), which governs the statewide registry of attorneys who are qualified to represent defendants in capital collateral proceedings. See Olive v. Maas, 811 So.2d 644 (Fla.2002) (Olive I). Section 27.711(4) limits the compensable hours available to registry attorneys and sets a maximum amount payable for each stage of postconviction representation. Additionally, section 27.711(3) provides that this fee and payment schedule is “the exclusive means of compensating a court-appointed attorney who represents a capital defendant.” We concluded that trial courts are authorized to grant attorney’s fees in excess of the statutory schedule where extraordinary or unusual circumstances exist in a case. Olive I, 811 So.2d at 654.
Only weeks after we issued our decision in Olive I, the Legislature added section 27.7002 to the Florida statutes, providing that compensation above the statutory schedule was not authorized and requiring any attorney who sought fees in excess of the cap to be permanently removed from the registry. Olive II, 992 So.2d at 199-200 (citing ch.2002-31, § 2, at 74-75, Laws of Fla.). Once again we invoked the doctrine of inherent judicial authority. “[W]e have consistently held that statutory limits for compensation of counsel may not constitutionally be applied in a manner that would curtail the trial court’s inherent authority to ensure adequate representation.” Id. at 202.
This Court has also cited the doctrine in a long line of cases involving attorney compensation as it relates to safeguarding a defendant’s right to effective representation. See, e.g., Remeta v. State, 559 So.2d 1132, 1135 (Fla.1990) (holding that “courts have the authority to exceed statutory fee caps to compensate court-appointed counsel for the representation of indigent, death-sentenced prisoners in executive clemency proceedings when necessary to ensure effective representation”); White v. Bd. of Cnty. Comm’rs, 537 So.2d 1376, 1379 (Fla.1989) (concluding that the statute setting a cap on attorney’s fees in a first-degree murder ease “is unconstitutional when applied in such a manner that curtails the court’s inherent power to secure effective, experienced counsel for the representation of indigent defendants in capital cases”); Makemson v. Martin Cnty., 491 So.2d 1109, 1112 (Fla.1986) (concluding that statute setting fee caps on compensation provided to attorneys who represented defendants at trial and first appeal would be unconstitutional “when applied in such a manner as to curtail the court’s inherent power to ensure the adequate representation of the criminally accused”).
The Third District’s conclusion that the courts cannot fashion an “office-wide solution” to the public defender’s excessive caseload does not comport with Florida case law. We have approved aggregate or systemic relief in a number of cases where public defenders were experiencing excessive caseloads or where the offices were underfunded. In In re Public Defender’s Certification of Conflict & Motion to Withdraw Due to Excessive Caseload & Motion for Writ of Mandamus, 709 So.2d 101, 104 (Fla.1998), we approved the Second District Court of Appeal’s order providing that the Public Defender of the Tenth Judicial Circuit would accept no new appellate cases until further order of the district court. In In Re Certification of Conflict in Motions to Withdraw Filed *273 by Public Defender of the Tenth Judicial Circuit, 636 So.2d 18, 19 (Fla.1994), we considered the district court’s actions in appointing a Special Commissioner to conduct fact-finding related to the public defender’s motion to withdraw from 382 overdue appeals “because of conflict caused by an excessive caseload.” We also approved the district court’s determination to grant withdrawal in all of those cases. In In Re Order on Prosecution of Criminal Appeals by the Tenth Judicial Circuit Public Defender, 561 So.2d 1130, 1132, 1138 (Fla.1990), we recognized that the backlog of cases in the public defender’s office was due to “the woefully inadequate funding” of the office and that such an excessive caseload can create a conflict. In Behr, 384 So.2d at 148-49, we considered the proper course of action when the public defender’s excessive caseload created a problem regarding effective representation. In Hatten v. State, 561 So.2d 562, 563 (Fla.1990), we described the public defender’s failure to prepare and timely file Hatten’s appellate brief as “not merely an isolated incident, but ... symptomatic of a larger problem” and recognized that excessive caseload in the public defender’s office “precludes effective representation of indigent clients.”
The Third District found the instant cases to be distinguishable from these other cases in which aggregate or “office-wide” relief has been afforded because of the method by which the public defender sought relief and the type of harm claimed. It is true that almost all of the aggregate relief cases have involved appellate cases where appeals and briefs have not been filed in a timely fashion. In some instances, the defendants had served their prison sentences or completed their probation before their appellate briefs were even filed by the public defender’s office. See Certification of Conflict, 709 So.2d at 102. The instant cases involved representation of defendants at trial and the Public Defender sought to withdraw en masse rather than seeking “individualized withdrawal” on a case-by-case basis. Public Defender, 12 So.3d at 802.
However, we find the Third District’s characterization that the instant cases involved “excessive caseload and no more,” id., to be a gross over simplification of the evidence presented here and the situation existing at the time the Public Defender sought relief. While we cannot succinctly recount the lengthy records in these two cases,[6] we are struck by the breadth and depth of the evidence of how the excessive caseload has impacted the Public Defender’s representation of indigent defendants. For example, the number of criminal cases assigned to the Public Defender has increased by 29% since 2004, while his trial budget was reduced by 12.6% through budget cuts and holdbacks over the fiscal years 2007-2008 and 2008-2009. After the implementation of Article V revisions in July 2004, the Legislature only funded 32 of the 82 overload attorneys that Miami-Dade County had been funding. The non-capital felony caseload has been in the range of 400 cases per attorney for a number of years. Yet, even the highest caseload standard recommended by professional legal organizations is 200 to 300 less.[7] At the time the motions were filed in these *274 cases, there were 105 attorneys to represent clients in 45,055 new and reopened cases. While the Public Defender has utilized a number of procedures to reduce the excessive caseloads (such as applying for grants in order to hire more attorneys; creating special units to handle bond hearings and early representation; and assigning third-degree felony caseloads to supervising attorneys, capital case attorneys, and first and second-degree felony attorneys), it has not alleviated the overall problem. Third-degree felony attorneys often have as many as fifty cases set for trial in one week because of the excessive caseload. Clients who are not in custody are essentially unrepresented for long periods between arraignment and trial. Attorneys are routinely unable to interview clients, conduct investigations, take depositions, prepare mitigation, or counsel clients about pleas offered at arraignment.[8] Instead, the office engages in “triage” with the clients who are in custody or who face the most serious charges getting priority to the detriment of the other clients.[9]
While this evidence is different from the deficiencies presented in the appellate cases where aggregate relief has been afforded in the past, it is still a damning indictment of the poor quality of trial representation that is being afforded indigent defendants by the Public Defender in the Eleventh Circuit. Additionally, the public defender’s lack of adequate resources or excessive caseload is likely to affect each client’s case differently in the pretrial context as the attorney “juggles” the cases against each other in “triage.”
In extreme circumstances where a problem is system-wide, the courts should not address the problem on a piecemeal case-by-case basis. This approach wastes judicial resources on redundant inquiries. If this Court had not approved systemic aggregate relief in the appellate cases cited above, the courts would have been clogged with hundreds of individual motions to withdraw. This is tantamount to applying a band aid to an open head wound.
Thus, we reaffirm that aggregate/systemic motions to withdraw are appropriate in circumstances where there is an office-wide or wide-spread problem as to effective representation.
Standard Applicable under Section 27.5303
We next address the standard for reviewing motions to withdraw under section 27.5303. In Public Defender, the Third District held that the public defender was required to prove prejudice or conflict, separate from excessive caseload, and must prove the prejudice or conflict on an individual basis in order to be permitted to withdraw from representing an indigent client. 12 So.3d at 805, 806. The district court also explained “[tjhat is not to say that an individual attorney cannot move *275 for withdrawal when a client is, or will be, prejudiced or harmed by the attorney’s ineffective representation.” Id. at 805. In Bowens, the trial court concluded that the Third District’s use of the disjunctive phrase “or will be” clearly indicated that a trial court may properly consider possible future harm. State v. Bowens, Case No. F09-019364, at 9 (Fla. 11th Cir. Oct. 25, 2009)(order denying public defender motion to declare statute unconstitutional and granting motion to withdraw).
The trial court also looked to Rule 4-1.7(a)(2) of the Rules Regulating The Florida Bar, which prohibits representation if there is a substantial risk that representation of one or more clients will be materially limited by the lawyer’s responsibilities to another client. The trial court concluded that the phrase “substantial risk” in the rule also contemplates future harm. Id. The trial court accordingly determined that in order to permit withdrawal based on excessive caseload, there “must be an individualized showing of substantial risk that representation of one or more clients will be materially limited by the lawyer’s responsibilities to another client.” Id. (emphasis added). The trial court concluded that assistant public defender Kol-sky had demonstrated the requisite prejudice to Bowens based on uncontroverted evidence that Kolsky had been able to do virtually nothing in preparation of Bowens’ defense, had not obtained a list of defense witnesses from Bowens, had not taken any depositions, had not visited the scene of the alleged crime, had not looked for defense witnesses or interviewed any, had not prepared a mitigation package, had not filed any motions, and had to request a continuance at the calendar call.
Additionally, expert witnesses presented credible testimony and evidence that the prejudice was a direct result of Kolsky’s excessive workload,[10] is not an intentional effort to avoid representing Bowens, and is not the result of a lack of skills or knowledge.[11] Id. at 10. Accordingly, the trial court determined that Bowens’ constitutional rights were prejudiced by Kolsky’s inability to properly represent him and granted Kolsky’s motion to withdraw.
On appeal, the Third District concluded that there was no evidence of “actual or imminent prejudice to Bowens’ constitutional rights.” Bowens, 39 So.3d at 481. The Third District explained that prejudice “means there must be a real potential for damage to a constitutional right, such as effective assistance of counsel or the right to call a witness, or that a witness might be lost if not immediately investigated.” Id. The Third District found the public defender’s failure to show “individualized prejudice or conflict separate from that which arises out of an excessive caseload” to be “the critical fact.” Id. The Third District deemed the prejudice to be “merely possible or speculative” and concluded that “the plain language of the statute” defeated the claim. Id. at 482.
The Public Defender argues that even though the Third District did not cite any authority for the “actual or imminent prejudice” standard, this is the Strickland standard that applies to postconviction claims of ineffective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The State contends that there are ade *276 quate remedies available through the appellate process and postconviction proceedings to remedy any violations of the indigent defendant’s right to effective counsel that may ensue from the conflict of an excessive caseload. The State’s position is that we cannot know if a particular deficiency is harmless until viewed in the context of the whole trial. See Platt v. State, 664 N.E.2d 357, 363 (Ind.App.Ct.1996) (“[A]ny violation of the Sixth Amendment must be reviewed in the context of the whole trial process, as the determination of the effectiveness of counsel is whether the defendant had the assistance necessary to justify reliance on the outcome of the proceeding”) (rejecting indigent defendant’s claim that the public defender system violated his Sixth Amendment right to effective pretrial assistance of counsel). But see New York Cnty. Lawyers’Ass’n v. N.Y., 294 A.D.2d 69, 76, 742 N.Y.S.2d 16 (N.Y.App.Div.2002) (rejecting the state’s argument that indigent clients who receive ineffective assistance because of inadequate compensation in the assigned counsel system have other post-judgment remedies to vindicate their rights such as an appeal of the conviction on grounds of ineffective assistance).
The Strickland standard has been criticized as “inappropriate” for suits seeking prospective relief. See Luckey v. Harris, 860 F.2d 1012, 1017 (11th Cir.1988). As the Eleventh Circuit explained,
The sixth amendment protects rights that do not affect the outcome of a trial. Thus, deficiencies that do not meet the “ineffectiveness” standard may nonetheless violate a defendant’s rights under the sixth amendment. In the post-trial context, such errors may be deemed harmless because they did not affect the outcome of the trial. Whether an accused has been prejudiced by the denial of a right is an issue that relates to relief — 'whether the defendant is entitled to have his or her conviction overturned — rather than to the question of whether such a right exists and can be protected prospectively.
Luckey, 860 F.2d at 1017. Additionally, there are powerful considerations in the postconviction context that warrant the deferential prejudice standard. These include: concerns for finality, concern that extensive post-trial burdens would discourage counsel from accepting cases, and concern for the independence of counsel. Strickland, 466 U.S. at 690, 104 S.Ct. 2052. These considerations do not apply when only prospective relief is sought. “Prospective relief is designed to avoid future harm. Therefore, it can protect constitutional rights, even if the violation of these rights would not affect the outcome of a trial.” Luckey, 860 F.2d at 1017 (citation omitted). See also Rodger Citron, Note, (Un)Luckey v. Miller: The Case for a Structural Injunction to Improve Indigent Defense Services, 101 Yale L.J. 481, 493-94 (1991) (“[T]he right to counsel is more than just the right to an outcome.”).
Luckey involved a civil rights action brought on behalf of indigent defendants seeking injunctive relief in order to remedy alleged deficiencies in the provision of indigent services in Georgia. The federal district court had dismissed the action on several grounds, including that the suit failed to state a claim for which relief could be granted. The district court ruled that the indigent defendants had to prove “an across-the-board future inevitability of ineffective assistance” under the standard set forth in Strickland. Luckey, 860 F.2d at 1016. On appeal, the Eleventh Circuit reversed the district court’s order and explained that the defendants’ burden was to show “the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law.” Id. at 1017 (quoting O’Shea v. Littleton, 414 U.S. 488, *277 502, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). The Eleventh Circuit concluded that the defendants’ allegations stated a sufficient claim upon which relief could be granted. These allegations included that:
systemic delays in the appointment of counsel deny them their sixth amendment right to the representation of counsel at critical stages in the criminal process, hamper the ability of their counsel to defend them, and effectively deny them their eighth and fourteenth amendment right to bail, that their attorneys are denied investigative and expert resources necessary to defend them effectively, that their attorneys are pressured by courts to hurry their case to trial or to enter a guilty plea, and that they are denied equal protection of the laws.
Id. at 1018.
The Louisiana Supreme Court considered a similar issue in Peart, 621 So.2d at 784, in which an indigent defendant filed a “Motion for Relief to Provide Constitutionally Mandated Protection and Resources.” The defendant Peart was assigned an attorney from the Orleans Indigent Defender Program (which is based on the public defender model) to represent him on a number of criminal charges. Id. at 784. At a hearing regarding the defense services being provided to Peart and other indigent defendants, the trial court learned that the attorney was handling seventy active felony cases; clients were routinely incarcerated for thirty to seventy days before the attorney met with them; the attorney had represented 418 defendants in an eight-month period that year; the attorney had entered guilty pleas at arraignment for 130 of these defendants; the attorney had at least one serious case set for trial on every trial date of that eight-month period; the attorney received no investigative support in most of his cases; and there were no funds for expert witnesses. Id.
One of the questions that the Louisiana Supreme Court considered was whether a trial court could address a claim of ineffective assistance of counsel before trial. The Louisiana Supreme Court concluded that “[i]f the trial court has sufficient information before trial, the judge can most efficiently inquire into any inadequacy and attempt to remedy it.” Id. at 787. The court explained that this approach furthers judicial economy, protects defendants’ constitutional rights, and preserves the integrity of the trial process. “It matters not that the ineffective assistance rendered may or may not affect the outcome of the trial to the defendant’s detriment.” Id. Moreover, as legal commentators have noted, the application of the Strickland standard to systemic deficiencies
provides no guarantee that indigent defendants will receive adequate assistance of counsel. By requiring the defendant to demonstrate that the ineffectiveness of counsel was prejudicial, the Strickland criteria tend to focus on errors of commission; however, especially with overworked defense attorneys, ineffective assistance more often results from an attorney’s errors of omission.
(Un)Luckey, 101 Yale L.J. at 487.
The New York Court of Appeals has characterized very similar circumstances to those presented in the instant cases as nonrepresentation rather than ineffective representation. Hurrell-Harring v. New York, 15 N.Y.3d 8, 904 N.Y.S.2d 296, 930 N.E.2d 217 (2010). In Hurrell-Harring, a group of indigent criminal defendants brought a class action alleging that the public defender system was deficient and presented an unacceptable risk that indigent defendants were being denied the constitutional right to counsel. The action had been dismissed by a lower court, hold *278 ing that there was no cognizable claim for ineffective assistance of counsel other than in a claim for postconviction relief. Id. 904 N.Y.S.2d 296, 930 N.E.2d at 220. The Court of Appeals described the following circumstances after counsel was nominally appointed: counsel was uncommunicative with the clients, made very little or no efforts on the clients’ behalf subsequent to arraignment, waived important rights without consulting the client, acted as mere conduits for plea offers, and were often unprepared to proceed when they made court appearances. Id. 904 N.Y.S.2d 296, 930 N.E.2d at 222, 224. The Court of Appeals explained that “[ajctual representation assumes a certain basic representational relationship” and that the allegations by the indigent defendants raised the “distinct possibility that merely nominal attorney-client pairings” were occurring with regularity. Id. 904 N.Y.S.2d 296, 930 N.E.2d at 224.
The instant case involves similar circumstances to Hurrell-Harring. Witnesses from the Public Defender’s office described “meet and greet pleas” as being routine procedure. The assistant public defender meets the defendant for the first time at arraignment during a few minutes in the courtroom or hallway and knows nothing about the case except for the arrest form provided by the state attorney, yet is expected to counsel the defendant about the State’s plea offer. In this regard, the public defenders serve “as mere conduits for plea offers.” The witnesses also described engaging in “triage” with their cases — giving priority to the cases of defendants in custody, leaving out-of-custody defendants effectively without representation for lengthy periods subsequent to arraignment. The witnesses also testified that the attorneys almost never visited the crime scenes, were unable to properly investigate or interview witnesses themselves, often had other attorneys conduct their depositions, and were often unprepared to proceed to trial when the case was called. Thus, the circumstances presented here involve some measure of non-representation and therefore a denial of the actual assistance of counsel guaranteed by Gideon and the Sixth Amendment.
The United States Supreme Court recently addressed two postconviction claims of ineffective assistance of counsel involving pleas. See Lafler v. Cooper, — U.S. -, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012); Missouri v. Frye, — U.S. -, 132 S.Ct. 1399, 182 L.Ed.2d 379, cert. denied, — U.S. -, 132 S.Ct. 1789, 182 L.Ed.2d 615 (2012). The Supreme Court recognized “the reality that criminal justice today is for the most part a system of pleas, not a system of trials,” noting that ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas. Lafler, 132 S.Ct. at 1388; Frye, 132 S.Ct. at 1407. Thus, the Supreme Court explained, “it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process.” Lafler, 132 S.Ct. at 1388; Frye, 132 S.Ct. at 1407. In Frye, the Supreme Court held that an attorney’s failure to timely communicate a plea offer to a defendant resulting in the offer expiring could deny the defendant the effective assistance of counsel, even where the defendant subsequently entered a knowing and voluntary plea on less favorable terms. Frye, 132 S.Ct. at 1408. In Lafler, the Supreme Court held that an attorney’s incorrect legal advice regarding a plea offer which resulted in the offer being turned down could deny the defendant effective assistance of counsel, even where the defendant was subsequently convicted following a full and fair trial before a jury. Lafler, 132 S.Ct. at 1386. In both cases, the Supreme Court rejected the State’s argument that there *279 was no Strickland prejudice because the defendant was later convicted or entered a guilty plea on less favorable terms. Lafler, 132 S.Ct. at 1386; Frye, 132 S.Ct. at 1406.
Based on the cases and analysis above, we conclude that the prejudice required for withdrawal under section 27.5303 when it is based on an excessive caseload is a showing of “a substantial risk that the representation of [one] or more clients will be materially limited by the lawyer’s responsibilities to another client.” R. Regulating Fla. Bar 4 — 1.7(a)(2). The records in the instant cases show competent, substantial evidence to support the trial courts’ findings and conclusions of law to that effect.
The trial court concluded that the caseload of felony public defenders in the Eleventh Judicial Circuit “far exceeds any recognized standard for the maximum number of felony cases a criminal defense attorney should handle annually.” In re: Reassignment & Consolidation of Public Defender’s Motions to Appoint Other Counsel in Unappointed, Noncapital Felony Cases, Case No. 08-1, at 4 (Fla. 11th Jud.Cir.Ct. Sept. 3, 2008). Additionally, third-degree felony cases, which comprise approximately sixty percent of all felony filings in the Eleventh Circuit, are “clogging the system and negatively impacting the [Public Defender’s] felony attorneys’ caseload.” Id. at 4-5. Supervising attorneys are handling third-degree felony cases to the detriment of their ability to handle capital cases and first and second-degree felony cases. Id. at 4. The reduced budget of the Public Defender and the excessive workload have contributed to a decrease in the number of assistant public defenders at the same time that the number of noncapital felony cases assigned to the office has increased by twenty-nine percent. Id. at 5. See also State v. Bowens, Case No. F09-019364, at 2-5 (Fla. 11th Cir.Ct. Oct. 25, 2009) (findings of fact regarding detrimental effect of attorney Kolsky’s caseload on ability to represent clients).
Therefore, we agree that the Public Defender has demonstrated cause for withdrawal pursuant to section 27.5303. However, we remand these cases to the trial court to determine if the same conditions still exist at this time.
Constitutionality of Section 27.5303(l)(d)
The Third District also certified a question regarding the constitutionality of section 27.5303(l)(d), which provides that “[i]n no case shall the court approve a withdrawal by the public defender ... based solely on the inadequacy of funding or excess workload.” See Bowens, 39 So.3d at 481.[12] The Third District stated that it agreed with the trial court’s analysis of the constitutionality of the statute and denied the Public Defender’s cross-petition for certiorari on that issue. Id. The certified question raises four possible constitutional challenges, asking whether the statute violates an indigent client’s (1) right to effective assistance of counsel and (2) right of access to courts and (3) whether it violates the separation of powers as a legislative interference with the judiciary’s inherent power to provide counsel and (4) the Supreme Court’s exclusive control over the ethical rules governing lawyer conflicts of interest.
The constitutionality of a statute is a question of law subject to de novo review by this Court. Crist v. Fla. Ass’n of Criminal Def. Lawyers, 978 So.2d at 139; Fla. Dep’t of Revenue v. City of Gainesville, 918 So.2d 250, 256 (Fla.2005); *280 Zingale v. Powell, 885 So.2d 277, 280 (Fla.2004). Although our review is de novo, statutes come clothed with a presumption of constitutionality and must be construed whenever possible to effect a constitutional outcome. See City of Gainesville, 918 So.2d at 256 (quoting Fla. Dep’t of Revenue v. Howard, 916 So.2d 640, 642 (Fla.2005)). “[Sjhould any doubt exist that an act is in violation ... of any constitutional provision, the presumption is in favor of constitutionality. To overcome the presumption, the invalidity must appear beyond reasonable doubt, for it must be assumed the legislature intended to enact a valid law.” Franklin v. State, 887 So.2d 1063, 1071 (Fla.2004) (quoting State ex rel. Flink v. Canova, 94 So.2d 181, 184 (Fla.1957)). It is a “settled principle of constitutional law that courts should not pass upon the constitutionality of statutes if the case in which the question arises may be effectively disposed of on other grounds.” Singletary v. State, 322 So.2d 551, 552 (Fla.1975). Additionally, a determination that a statute is facially unconstitutional means that no set of circumstances exists under which the statute would be valid. Lewis v. Leon Cnty., 73 So.3d 151, 153 (Fla.2011); City of Gainesville, 918 So.2d at 256.
The language currently contained in section 27.5303(l)(d) was added when this statute was created in 2003 and became effective July 1, 2004. See ch.2003-402, § 19, at 3668-70, Laws of Fla. This provision states that “[i]n no case shall the court approve a withdrawal by the public defender or criminal conflict and civil regional counsel based solely upon inadequacy of funding or excess workload of the public defender or regional counsel.” § 27.5303(l)(d), Fla. Stat. (2007) (emphasis added.)
In addressing the constitutionality, we read the challenged subsection in pari materia with subsections (l)(a) and (l)(e). These subsections provide, in pertinent part:
(l)(a) If, at any time during the representation of two or more defendants, a public defender determines that the interests of those accused are so adverse or hostile that they cannot all be counseled by the public defender or his or her staff without conflict of interest, or that none can be counseled by the public defender or his or her staff because of a conflict of interest, then the public defender shall file a motion to withdraw and move the court to appoint other counsel. The court shall review and may inquire or conduct a hearing into the adequacy of the public defender’s representations regarding a conflict of interest without requiring the disclosure of any confidential communications. The court shall deny the motion to withdraw if the court finds the grounds for withdrawal are insufficient or the asserted conflict is not prejudicial to the indigent client.
(e) In determining whether or not there is a conflict of interest, the public defender or regional counsel shall apply the standards contained in the Uniform Standards for Use in Conflict of Interest Cases found in appendix C to the Final Report of the Article V Indigent Services Advisory Board dated January 6, 2004.
The only conflicts addressed in the Uniform Standards for Use in Conflict of Interest Cases are conflicts involving code-fendants and certain kinds of witnesses or parties. There is no discussion of “conflicts arising from underfunding, excessive caseload, or the prospective inability to adequately represent a client.” Public Defender, 12 So.3d at 804. The Third District concluded that the Legislature’s pro *281 mulgation of this law “which prohibited withdrawal based on excessive caseload and which stated that the ‘conflict of interest’ contemplated by section 27.5303 included only the traditional conflicts arising from the representation of codefendants” prevents the courts from considering other conflicts of interest as a basis for a motion to withdraw. Id.
However, we rejected a similar argument regarding the same statutory language when it was previously contained in section 27.53(3). In Behr, 384 So.2d at 148, the County argued that the only circumstance under which the public defender could withdraw was a conflict of interest between the clients of the office and did not include the circumstance of excessive caseload. We rejected this argument, as well as the argument that excessive caseload was a special circumstance that provided a lawful ground for the appointment of substitute counsel for the public defender.[13] Id. at 149-50. Instead, we adopted the dissenting opinion from the court below as our rationale, concluding that the trial court’s discretion to appoint a special assistant public defender was “virtually unfettered” and “not dependent” on a showing of lawful ground or special circumstances. Id. at 149.
The State argues that the issue is moot because assistant public defender Kolsky was replaced as counsel on Bow-ens’ case after the Court accepted it for review. Thus, the State argues, the Court should not consider the constitutionality of the statute. However, the mootness doctrine does not destroy this Court’s jurisdiction in a case where the question before it is of great public importance and is likely to recur. See State v. Matthews, 891 So.2d 479, 484 (Fla.2004); Holly v. Auld, 450 So.2d 217, 218 n. 1 (Fla.1984) (“It is well settled that mootness does not destroy an appellate court’s jurisdiction ... when the questions raised are of great public importance or are likely to recur.”).
The trial court concluded that the used of the word “solely” in section 27.5303(l)(d) is not a prohibition on considering excessive caseload as a factor in an attorney’s motion to withdraw, just that other considerations must also be present. State v. Bowens, Case No. F09-019364, at 7 (Fla. 11th Cir.Ct. Oct. 25, 2009) (order denying public defender’s motion to declare section 27.5303(l)(d) unconstitutional and granting public defender’s motion to withdraw). The trial court concluded that there “exists a cognizable difference between a withdrawal based solely on workload, and a withdrawal where an individualized showing is made that there is a substantial risk that a defendant’s constitutional rights may be prejudiced as a result of the workload.” Id. at 8. Because the trial court found that this distinction “allows judicial relief where prejudice to constitutional rights is adequately demonstrated,” it found the statute not to be constitutionally infirm. Id.
The cases dealing with the statutory caps on attorney’s fees guide our resolution of this issue. See Maas, 992 So.2d at 196; White, 537 So.2d at 1376; Makemson, 491 So.2d at 1109. In each instance, we did not find the statutes unconstitutional on their face, but concluded that they “could be unconstitutional when applied to curtail the [trial] court’s inherent authority to ensure adequate representation of the criminally accused.” Olive, 992 So.2d at 203. The same applies in the instant case. -If section 27.5303(l)(d) is interpreted as *282 prohibiting any motions to withdraw based on excessive caseloads or underfunding, then it would violate the courts’ inherent authority to ensure adequate representation of indigent defendants.
Moreover, this Court has repeatedly recognized that excessive caseload in the public defender’s office creates a problem regarding effective representation. See Certification of Conflict, 636 So.2d at 23 n. 1 (Harding, J., concurring) (recognizing that public defender had demonstrated sufficient grounds for withdrawal in nearly 400 appeals “because of conflict caused by an excessive caseload”); Order on Prosecution, 561 So.2d at 1135 (“When excessive caseload forces the public defender to choose between the rights of the various indigent criminal defendants he represents, a conflict of interest is inevitably created.”); Behr, 384 So.2d at 147 (Fla.1980) (“[T]he Public Defender for the First Judicial Circuit filed motions to withdraw as counsel in a number of felony cases on the ground that his excessive case load would preclude the performance of effective representation on behalf of the indigent defendants.”). “[W]here the backlog of cases in the public defender’s office is so excessive that there is no possible way he can timely handle those cases, it is his responsibility to move the court to withdraw.” Order on Prosecution, 561 So.2d at 1138.
Thus, we find the statute to be facially constitutional and answer the certified question in the negative. However, the statute should not be applied to preclude a public defender from filing a motion to withdraw based on excessive caseload or underfunding that would result in ineffective representation of indigent defendants nor to preclude a trial court from granting a motion to withdraw under those circumstances.
Standing of State Attorney’s Office
Finally, we address whether the State Attorney’s Office has standing to oppose a public defender’s certification of conflict. The trial court denied standing, but allowed the State Attorney’s Office to participate in the proceedings as amicus curiae. Public Defender, 12 So.3d at 800. On appeal, the Third District cited the state attorney’s statutory obligation under section 27.02(1) to “appear in the circuit and county courts within his or her judicial circuit and prosecute or defend on behalf of the state all suits, applications, or motions, civil or criminal, in which the state is a party.” Public Defender, 12 So.3d at 801. The Third District concluded that this statutory obligation and the State’s status as a party to criminal cases conferred standing on the state attorney to challenge the motions filed by the Public Defender. Id.
“Determining whether a party has standing is a pure question of law to be reviewed de novo.” Sanchez v. Century Everglades, LLC, 946 So.2d 563, 564 (Fla.3d DCA 2006) (quoting Alachua Cnty. v. Scharps, 855 So.2d 195, 198 (Fla. 1st DCA 2003)). Generally, standing “requires a would-be litigant to demonstrate that he or she reasonably expects to be affected by the outcome of the proceedings, either directly or indirectly.” Hayes v. Guardianship of Thompson, 952 So.2d 498, 505 (Fla.2006); see generally Brown v. Firestone, 382 So.2d 654, 662 (Fla.1980) (“[T]his Court has long been committed to the rule that a party does not. possess standing to sue unless he or she can demonstrate a direct and articulable stake in the outcome of a controversy.”); Weiss v. Johansen, 898 So.2d 1009, 1011 (Fla. 4th DCA 2005) (“Standing depends on whether a party has a sufficient stake in a justiciable controversy, with a legally cognizable interest which would be affected by the outcome of *283 the litigation.”). Thus, standing to bring or participate in a particular legal proceeding often depends on the nature of the interest asserted.
This issue was disposed of in our recent decision in Johnson v. State, 78 So.3d 1305, 1314-15 (Fla.2012), which addressed the standing of the Office of Criminal Conflict and Civil Regional Counsel (RCC) to object to a public defender’s motion to withdraw. We concluded that RCC did not have standing because it was not a party to the proceedings, even though it has an “articulable stake in the outcome of the proceedings” because it has a statutory duty of representation should the public defender be permitted to withdraw. RCC’s interest was similar to that of the counties who sought standing to be heard on public defenders’ motions to withdraw based on the counties’ financial responsibilities of compensating appointed private counsel. See In re Order on Prosecution of Criminal Appeals by Tenth Judicial Circuit Public Defender, 561 So.2d 1130 (Fla.1990); Behr, 384 So.2d at 150.
We explained that an articulable stake in the outcome of the proceedings (such as the counties’ financial obligations to pay the appointed counsel or the possibility that RCC would be appointed as counsel if a motion to withdraw was granted) was not the same as the State’s role as a party to the proceedings. Johnson, 78 So.3d at 1314. Additionally, we cited with approval the ruling in Public Defender that the State had standing to oppose a motion to withdraw by the public defender because the State is a party to criminal cases and the state attorney has a statutory obligation to prosecute or defend on behalf of the State. Id. Thus, we approve the Third District’s conclusion that “the State had standing to challenge the motions filed by [the public defender].” Public Defender, 12 So.3d at 801.
III. CONCLUSION
Consistent with the analysis above, we quash the Third District’s decision in Public Defender and quash in part and affirm in part its decision in Bowens. We also remand for the trial court to determine if the circumstances still warrant granting the Public Defender’s motion to decline appointments in future third-degree felony cases under the standards approved in this decision.
It is so ordered.
PARIENTE, LEWIS, LABARGA, and PERRY, JJ., Concur.
CANADY, J., concurs in part and dissents in part.
POLSTON, C.J., concurs in part and dissents in part with an opinion, in which CANADY, J., concurs.

. The style State v. Bowens was changed by this Court in order to reflect the same parties of interest as in Case SC09-1181. Both cases involve the Public Defender's Office for the Eleventh Judicial Circuit and motions to withdraw from representation premised on conflict from excessive caseload.

. Section 27.02(1), Florida Statutes (2007), provides, in pertinent part, that “[t]he state attorney shall appear in the circuit and county courts within his or her judicial circuit and prosecute or defend on behalf of the state all suits, applications, or motions, civil or criminal, in which the state is a party.”

. The Eleventh Circuit Public Defender's Office is structured so that a set of attorneys represents clients through arraignment (the Early Representation Unit or ERU). After arraignment, representation shifts to another set of attorneys.

. Section 27.5303(l)(d), Florida Statutes (2007), provides: “In no case shall the court approve a withdrawal by the public defender or criminal conflict and civil regional counsel based solely upon inadequacy of funding or excess workload of the public defender or regional counsel.”

. The Public Defender contends that the office's excessive caseload prevents the attorneys from complying with the following Rules Regulating The Florida Bar: Rule 4-1.1 (Competence); Rule 4-1.2(a) (Lawyer to Abide by Client’s Decision); Rule 4-1.3 (Diligence); Rule 4-1.4 (Communication); Rule 4-1.7(a)(2) (Conflict of Interest; Current Clients); and Rule 4-5.1 (Responsibilities of Partners, Managers, and Supervisory Lawyers).

. The combined record in these two cases comprises twenty-six volumes. The evidence in each case includes testimony, documents, statistics, and expert opinion.

. The American Council of Chief Defenders and the National Advisory Commission on Criminal Justice Standards and Goals recommend a caseload of 150 felonies per year. The Governor’s Commission on Criminal Justice Standards and Goals set the standard at 100 cases. Even the highest standard offered by the Florida Public Defender Association is 200 cases.

. This was not evidence of isolated incidents, but of systemic inability of the public defender attorneys to perform these functions on a regular basis. The United States Supreme Court once warned that the "denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution....” Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377 (1940).

. In considering a defendant’s claim that he was receiving ineffective assistance of counsel before trial from his indigent defender who had an excessive caseload, the Louisiana Supreme Court cited a similar situation in which the named defendant was receiving effective representation while the attorney's other clients were not. According to the Louisiana Supreme Court, this "reflects the fact that indigent defenders must select certain clients to whom they give more attention than they give to others.” Peart, 621 So.2d at 785 n. 4.

. At the time, Kolsky was the sole third-degree felony attorney covering his courtroom and had to absorb the caseload of his coworker who left the office for other employment.

. At the time, Kolsky had thirty-six years’ experience and was considered one of the best and most experienced lawyers in the office.

. The constitutionality of the statute was not addressed in Public Defender.

. At the time of the Court's decision in Behr, section 27.53(2), Florida Statutes (1977), provided that the court had the option of appointing a member of The Florida Bar to represent an insolvent defendant in a criminal proceeding. 384 So.2d at 149.